[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 675 
In June 1987, Glenn William Holladay,* the appellant, was convicted of murder made capital because two or more persons were murdered by one act or pursuant to one scheme or cause of conduct. § 13A-5-40(a)(10), Ala. Code 1975. The appellant killed three people — his former wife, Rebecca Ledbetter Holladay; her boyfriend, David Robinson; and Larry Thomas, Jr., a friend of Ms. Holladay's son. He was sentenced to death. He appealed this conviction and sentence, and this court affirmed. Holladayv. State, 549 So.2d 122 (Ala.Cr.App. 1988). Thereafter, this court's judgment was affirmed on certiorari review by the Alabama Supreme Court. Ex parte Holladay, 549 So.2d 135 (Ala. 1989). The United States Supreme Court then denied his petition for writ of certiorari. Holladay v. Alabama, 493 U.S. 1012,110 S.Ct. 575, 107 L.Ed.2d 569 (1989). *Page 676 
On September 10, 1990, the appellant filed a petition, pursuant to Rule 20, A.R.Crim.P. Temp., for relief from his conviction and sentence. An evidentiary hearing was held on the petition, following which the trial judge, who had also presided over the appellant's trial, denied relief. In his order, the trial judge found that the majority of the claims were precluded from review, because the appellant failed to raise them at trial or on direct appeal. Rule 20.2(a)(3) and Rule 20.2(a)(5), A.R.Crim.P. Temp. The trial court addressed the merits of the appellant's ineffective assistance of counsel claims, determining that the appellant received effective assistance at trial and on appeal. In his petition, the appellant also argues that the trial court erred during his hearing on his Rule 20 petition by refusing him funds for experts to testify at the hearing, and by adopting the State's proposed findings of fact and conclusions of law.
 I
The trial court found that 15 of the appellant's claims were procedurally barred, because they were not raised at trial. Although two claims were improperly included in this group, those claims were also in fact procedurally barred. Floyd v.State, 571 So.2d 1221, 1233 (Ala.Cr.App. 1989), reversed on other grounds, 571 So.2d 1234 (Ala. 1990). The trial court also properly found one claim to be procedurally barred because it was raised at trial, but not on appeal.
The issues set out by the trial court as procedurally barred, pursuant to Rule 20.2(a)(3) and Rule 20.2(a)(5), A.R.Crim.P. Temp., because they were not raised at trial or on appeal, were as follows:
 "B. THE PREJUDICIAL SECURITY MEASURES TAKEN DURING MR. HOLLADAY'S TRIAL VIOLATED HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "C. AUDIENCE OUTBURSTS PREJUDICED MR. HOLLADAY'S JURY AND DENIED HIM HIS RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "D. THE PROSECUTION'S PLAINLY IMPROPER CROSS-EXAMINATION OF MR. HOLLADAY DENIED MR. HOLLADAY A RELIABLE GUILT/INNOCENCE DETERMINATION AND THEREFORE VIOLATED HIS RIGHTS UNDER THE EIGHTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 "E. THE GUILT PHASE JURY'S CONSIDERATION OF MR. HOLLADAY'S PRIOR CRIMES UNRELATED TO THE CHARGED OFFENSE AS SUBSTANTIVE EVIDENCE OF HIS GUILT VIOLATED HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "F. THE PROSECUTOR'S PLAINLY ERRONEOUS GUILT PHASE CLOSING ARGUMENT DENIED MR. HOLLADAY A RELIABLE GUILT/INNOCENCE DETERMINATION AND THEREFORE VIOLATED HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 "G. THE TRIAL COURT DENIED MR. HOLLADAY HIS RIGHT TO TESTIFY THEREBY VIOLATING HIS SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS AND ALABAMA LAW.
 "H. MR. HOLLADAY'S DEATH SENTENCE WAS OBTAINED IN VIOLATION OF THE PRINCIPLES OF BOOTH v. MARYLAND
AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "I. THE PROSECUTION'S PLAINLY ERRONEOUS PENALTY PHASE CLOSING ARGUMENT DENIED MR. HOLLADAY A RELIABLE SENTENCE AND THEREBY VIOLATED HIS RIGHTS UNDER THE SIXTH, *Page 677 EIGHTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "J. THE TRIAL COURT RESTRICTED THE SENTENCING PHASE JURY'S CONSIDERATION OF EVIDENCE ADMITTED DURING THE PENALTY PHASE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "K. THE TRIAL COURT'S PENALTY PHASE JURY INSTRUCTIONS VIOLATED MILLS v. MARYLAND AND THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "L. MR. HOLLADAY'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE DENIED BY THE STATE'S INTENTIONAL AND DISCRIMINATORY EXERCISE OF PEREMPTORY CHALLENGES.
 "M. THE STATE'S FAILURE TO DISCLOSE TO MR. HOLLADAY EVIDENCE FAVORABLE TO HIM AND MATERIAL TO THE QUESTIONS OF HIS GUILT AND PUNISHMENT VIOLATED MR. HOLLODAY'S [SIC] RIGHTS UNDER THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "N. THE TRIAL COURT'S INSTRUCTIONS IMPROPERLY LIMITED THE JURY'S CONSIDERATION OF STATUTORY MITIGATING CIRCUMSTANCES AND VIOLATED MR. HOLLADAY'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "O. MR. HOLLADAY'S CONVICTION IS BASED ON CLEAR PROSECUTORIAL MISCONDUCT AND VIOLATED MR. HOLLADAY'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ALABAMA LAW.
 "P. DURING GUILT AND PENALTY PHASES, THE JURORS USED EXTRANEOUS INFORMATION IN ARRIVING AT THEIR VERDICT IN VIOLATION OF MR. HOLLADAY'S SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS AND ALABAMA LAW."
The appellant's claim "G," that the trial court denied him of his right to testify, was raised at trial. However, it was never raised on appeal, and the trial court, in its order, subsequently held that this particular claim was barred from review "because it could have been raised on direct appeal," citing Rule 20.2(a)(5), A.R.Crim.P. Temp.
The appellant's claim "M," that the State failed to disclose exculpatory evidence, was properly precluded from review pursuant to Rule 20.6(b), A.R.Crim.P. Temp.[1] "A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings." Rule 20.6(b). The appellant's claim specified no alleged evidence, nor did the appellant's brief in support of his petition. Further, although an evidentiary hearing was held pursuant to the appellant's petition, no specific allegations or proof as to any such exculpatory evidence was introduced. See Thompson v. State, 581 So.2d 1216,1244 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 868, 116 L.Ed.2d 774 (1992) (wherein, in a footnote, this court agreed with the trial court's holding that, because testimony at the hearing did not relate to an allegation of ineffectiveness raised by the *Page 678 
petitioner, it could not constitute a basis for relief, because a petitioner "is not entitled to relief on any claim not pleaded with specificity. Temporary Rule 20.6(b), Alabama Rules of Criminal Procedure"). "We have previously held that a trial court's ruling will be affirmed if it was correct for any reason. E.g., Nicks v. State, 521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied,487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988)." Floyd v. State,571 So.2d 1221, 1233 (Ala.Cr.App. 1989), reversed on other grounds, 571 So.2d 1234 (Ala. 1990) (this court held that, although the trial court found an issue precluded on the incorrect basis that it was contained in a successive petition, the issue was properly precluded because it was not raised at trial or on direct appeal).
The appellant's claim "P," that the jury used extraneous information in arriving at its verdict, was added pursuant to a motion to amend the petition. In making his motion to amend, the appellant cited no specific extraneous information used by the jurors. Thus this allegation would have properly been dismissed pursuant to Rule 20.6, A.R.Crim.P. Temp., as argued by the State in the motion to dismiss. There is no indication in the record by way of an order or excerpt from the case action summary to indicate that the appellant's motion to amend was granted. However, the appellant was allowed to elicit testimony from certain jurors that the panel prayed at various times during its deliberations, and that certain jurors read from the Bibles found in their hotel rooms. However, the evidence indicated that jurors read the Bibles because there was little else to do in the hotel rooms. Moreover, the evidence indicated that the prayers during the deliberations were strictly for support in arriving at a decision and for a proper decision. There was further testimony that the foreman of the jury was a minister; however, there is no indication that the appellant was unaware of this fact at trial. Moreover, on cross-examination, a jury member testified that he was first approached by defense counsel on this matter approximately a month or two before the hearing. This would have been three years after this court affirmed his conviction and sentence, and two years after the Alabama Supreme Court affirmed our judgment on certiorari review. There is nothing in the record to indicate that this matter could not have been raised on appeal.
All of the claims found by the trial court to be procedurally barred were precluded from review. "Claims which could have been raised at trial, by objection or motion, and then on direct appeal but were not are barred from further review."Thompson v. State, 581 So.2d 1216, 1223 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 868, 116 L.Ed.2d 774
(1992), citing Rule 20.2(a)(3) and (5), A.R.Cr.P. Temp.; Exparte Ellison, 410 So.2d 130, 132 (Ala. 1982); Jackson v.State, 501 So.2d 542, 544 (Ala.Cr.App. 1986), cert. denied,483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987); Magwood v.State, 449 So.2d 1267, 1268 (Ala.Cr.App. 1984). Moreover, claim "G," which was raised at trial but not on appeal, was properly barred. Thompson, citing Rule 20.2(a)(5), A.R.Crim.P. Temp.;Ex parte Rudolph, 276 Ala. 392, 393, 162 So.2d 486 (1964), cert. denied, 377 U.S. 919, 84 S.Ct. 1185, 12 L.Ed.2d 188
(1964); Bass v. State, 417 So.2d 582, 584 (Ala.Cr.App.), cert. denied, 417 So.2d 588 (Ala. 1982); and Summers v. State,366 So.2d 336, 340 (Ala.Cr.App. 1978), cert. denied, 366 So.2d 346
(Ala. 1979).
 II
The appellant raises 14 allegations of ineffective assistance of counsel at trial and on appeal. In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet the two-pronged test established by Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is *Page 679 
reliable. Unless the defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Id. at 687, 104 S.Ct. at 2064. The United States Supreme Court established this heavy burden because of the potential problems of an appellate court's evaluating a counsel's performance, with the benefit of hindsight.
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, 350 U.S. [91], at 101, 76 S.Ct. [158], at 164 [100 L.Ed. 83
(1955)]."
Id. at 689-90, 104 S.Ct. at 2065-66.
 "A lawyer is not required to raise all conceivable claims in order to render effective assistance. Lindsey v. Smith, 820 F.2d 1137, 1144
(11th Cir. 1987). It is sound strategy for a lawyer to narrow the number of issues on appeal. Smith v. Murray, [477 U.S. 527], 106 S.Ct. 2661, 2667 [, 91 L.Ed.2d 434] (1986). This type of winnowing out of weaker arguments in favor of those arguments likely to succeed is the type of effective appellate advocacy approved by the United States Supreme Court."
Thompson v. State, supra, at 1244.
In the present case, the appellant objects to his counsel's effectiveness during the guilt phase and the penalty phase and on appeal.
 A.
The appellant argues that his attorneys failed to object sufficiently to the security measures taken in the courtroom during his trial. The appellant concedes that his attorneys strenuously objected to the presence of leg irons on him during the trial, but he argues that their objections were insufficient. He claims that his attorneys should have objected to the presence of law enforcement officers and of metal detectors, and to the use of the leg irons in plain view of the jury. However, during the Rule 20 hearing, one of the appellant's trial attorneys testified that she felt that the security was necessary under the circumstances and that she recalled that the officials were careful to avoid moving the appellant when the jury was present so as to minimize the effect of the leg irons. In regard to this claim, the trial court stated:[2]
 "According to the testimony of Deputy John Raley, who was a coordinator of courtroom security at the time of Holladay's trial, there was reason to fear for the safety of Glenn Holladay. The father of the youngest victim in the case had avowed to kill Holladay and had in fact been disarmed at another courtroom proceeding in another county when he was going into the courtroom where Glenn Holladay was present. Also according to Deputy Raley, Holladay was an escape risk, since he had escaped from the Etowah County jail at an earlier point in time as well as from the Cherokee County jail just previous to the murders. This court finds that Holladay remained in leg shackles during the course of the trial and further finds that there were law enforcement officers from the sheriff's office as well as from the state trooper's office who remained no closer *Page 680 
than 15 feet, possibly 10 feet, from the defendant during the course of the trial. Further, there were two or three deputies, only one of whom was in uniform at any point in time during the trial, and only two of whom would be in the courtroom at any one time. According to the testimony of the Alabama State Troopers Bradford, Wilemon and Bailey, Alabama State Troopers were in uniform and were present in the courtroom, two or three troopers at a time and were not closer than 15 feet from the defendant. The purpose of the Alabama State Trooper's presence was to provide courtroom security for the safety of the defendant as well as the other people present.
 "This Court finds that the presence of the law enforcement officers in the courtroom during the trial of Holladay was unobtrusive, reasonable and necessary. There was no unnecessary noise or disturbance created by the law enforcement officers, nor did their presence prejudice Mr. Holladay in any way. Further, five of the jurors who sat on the trial jury at Holladay's trial testified in the post-conviction hearing. Those five jurors testified that their attention was focused on the trial proceedings and on the witnesses testifying."
As the trial court noted, several jurors testified that the security measures had no effect on their verdict. Based on these responses, and in light of the fact that the security was reasonable and justified under the circumstances, the appellant has failed to establish that his attorneys' failure to more strenuously object made their performance ineffective under the test established in Strickland v. Washington, supra.
 B.
The appellant argues that the performance of one of his trial counsel was ineffective because, he says, she failed to investigate, discover, and present evidence during sentencing of his troubled childhood and mental health difficulties. The trial court found this claim to be contradicted by the evidence admitted during the trial and during the Rule 20 hearing. The trial court stated as follows:
 "[One of the appellant's trial attorneys] interviewed those members of Holladay's family who seemed interested in assisting, obtained and introduced into evidence D.H.R. records for the entire family for a period of almost twenty years, and obtained and introduced into evidence educational records pertaining to Holladay. These records revealed a troubled family background, including alcoholic parents, periods of foster care for the children and the family, including Holladay, educational placement problems with Holladay, Holladay's learning problems, and what the school officials designated as Holladay's mental retardation.
 "[One of the appellant's trial attorneys] testified at the hearing that she did not know of any other records that would have more accurately reflected Holladay's troubled background than these very records. All these Department of Human Resources and educational records were introduced into evidence at the sentencing phase of Holladay's trial, and this court charged the sentencing phase jury that some of the mitigating circumstances they could consider included the Holladay family history that would reasonably be expected to contribute to Holladay's criminal acts, the abuse and neglect of Holladay when he was a child and Holladay's mental retardation.
 "The results of Holladay's Taylor Hardin [Secure Medical Facility] pre-trial evaluation showed Holladay as being competent to stand trial, suffering from no mental disease or defect, and showed no evidence to support the existence of any statutory or non-statutory mitigating circumstances concerning his mental or emotional state at the time of the murders. [Trial counsel] testified at the Rule 20 hearing that her contacts with Holladay were without conflict, controversy or difficulty; that Holladay communicated well and had no apparent loss [of] memory for dates, times, places, motivation, and events; that Holladay was affable and articulate and communicated with his attorneys without hesitation. *Page 681 
 "[Trial counsel] saw no reason for any additional experts to evaluate Holladay other than the three psychiatrists and one psychologist who had already rendered an opinion from Taylor Hardin. This Court finds that after having investigated Holladay's mental condition and finding no facts to support a request for another expert, [trial counsel] made a strategic decision based on that investigation not to seek expert assistance.
 "[Trial counsel]'s performance was not deficient where she conducted a reasonable investigation but was not able to discover evidence because none existed."
The trial court further found that the appellant's trial counsel was not ineffective for failing to seek expert testimony concerning the appellant's mental state. In so finding, the trial court stated:
 "Dr. Joe Dixon, who testified for the State, is a certified forensic psychologist, and he has taught the subject of mental retardation at the university level. In his opinion, Holladay is not mentally retarded, but instead falls into the borderline range of intelligence. However, Dr. Dixon felt that quibbling over the scores Holladay obtained on IQ tests in the past was not meaningful, as all Holladay's adult IQ scores fell relatively close together. Dr. Dixon stressed the importance of adaptive functioning in assessing Holladay's mental capacity, and found that Holladay has sufficient skills to function acceptably in our society, should he choose to do so. Dr. Dixon also found that Holladay fits the diagnostic criteria for anti-social personality disorder.
 "Dr. Brad Fisher, who is a clinical psychologist, testified for Holladay. In his opinion, Holladay is mildly mentally retarded. Dr. Fisher bases this diagnosis on the IQ test results obtained when Dr. Fisher administered the Wechsler Intelligence Test to Holladay as well as on IQ test results dating back to 1958, when Holladay was nine years old.
 "Dr. Michael Norko, who is a psychiatrist, testified for Holladay. In his opinion, Holladay is mildly mentally retarded and fits the diagnostic criteria for organic personality syndrome, explosive type. Dr. Norko bases his diagnosis of mental retardation on Holladay's childhood diagnosis of mental retardation coming from IQ tests during that period, on other various records and historical data, and on the IQ test results obtained by Dr. Fisher. Dr. Norko bases his diagnosis of organic personality syndrome, explosive type, on the self-reporting of Holladay, several affidavits executed by friends and family of Holladay, the discrepancy between the verbal and performance scales on the Wechsler Intelligence Test administered to Holladay by Dr. Fisher and by various mental health professionals in the past, and historical data from various sources.
 "This Court credits the testimony of Dr. Dixon and does not credit the testimony of Dr. Fisher and Dr. Norko for a number of reasons.
 "Holladay was seen and evaluated as an adult by at least seven competent psychologists and psychiatrists. He was given the Wechsler Intelligence Test approximately two months before being sent, at the request of [trial counsel] to Taylor Hardin Secure Medical Facility, and he took the [Minnesota Multi-phasic Personality Inventory] at about the same time. Dr. Dixon's diagnosis and opinion were supported by the test results, diagnoses, and opinions of these professionals, yet none of these arrived at the diagnosis and opinion arrived at by Dr. Fisher or Dr. Norko.
 "Dr. Fisher, who is not a certified forensic examiner, has taken a total of two courses on the subject of mental retardation. He had trouble articulating the definition of 'adaptive functioning' in operative terms, and he did not find Holladay to possess significant amounts of adaptive functioning skills, though the evidence contradicted this assertion. He based this opinion on his assessment that Holladay 'couldn't make it in the outside world,' and he defined not being able to make it in the outside world as 'poor adaptive behavior.' This circuitous and non-specific rambling is not worthy of belief. Dr. Fisher simply refused to find any significant amount of adaptive functioning skills in Holladay in *Page 682 
spite of overwhelming evidence to the contrary.
 "Dr. Fisher averaged IQ scores obtained from Holladay's childhood with IQ scores some 20 points higher which were obtained when Holladay reached maturity, in order to assist in his diagnosis of mental retardation. Yet at the same time, Dr. Fisher admits, on cross-examination, that Holladay is capable of scoring at least in the borderline range, having scored a 72 on the Wechsler Intelligence Test in 1979, when Holladay was an adult. This Court finds no credibility in such contradictory testimony. In addition, Dr. Fisher was not able to articulate any reason for the appreciable differences between his findings and the findings of the psychiatrists and psychologists who evaluated Holladay in the past. This position is clearly unsupported by the evidence and, therefore, lacks credibility.
 "Dr. Fisher found the profile generated by the MMPI administered to Holladay in December 1986 to be invalid. This is in direct conflict with the computer-generated test results scoring sheet itself, which states that 'this profile is valid.' Dr. Fisher's position on this lacks credibility.
 "Dr. Fisher disagrees with the diagnosis of anti-social personality disorder, yet he used many of the diagnostic criteria for anti-social personality disorder, as listed in the DSM-III-R, as support of his diagnosis of mental retardation. Dr. Fisher called these traits 'maladaptive behavior,' thus apparently confusing concepts of adaptive functioning, which is an important part of an assessment of mental retardation, with the maladaptive behavior traits that are frequently associated with persons who are diagnosed to have anti-social personality disorders. This position is untenable and therefore lacks merit.
 "Dr. Norko's diagnosis of mental retardation is based on essentially the same considerations upon which Dr. Fisher's diagnosis was based. As was true of Dr. Fisher, Dr. Norko does not place significance on the findings of the seven psychiatrists and psychologists who had previously evaluated Holladay. Dr. Norko discounts their previous diagnoses of anti-social personality disorder simply as being incorrect. This position is untenable and is, therefore, without merit.
 "Dr. Norko gives a diagnosis of organic personality syndrome instead of the diagnosis derived by Dr. Dixon and the other experts in the past, because, as Dr. Norko said, the diagnosis of anti-social personality disorder 'doesn't speak to the rages, the sudden emotional excesses, emotional lability, or indiscretions.' Dr. Norko stated that two of the major contributing factors to his diagnosis of organic personality syndrome, explosive type, were alleged rages and the difference between the two scales of the IQ test results. Yet the primary source of evidence that Dr. Norko had concerning rages, sudden emotional excesses, emotional lability, or indiscretions came from affidavits executed by friends and family of Holladay, Holladay himself, and from the letter to the district attorney written by Dr. Fiest, M.D., after he evaluated Holladay. As Dr. Fiest testified, the information in the letter came from Holladay himself. Where Holladay's 'rages' figure prominently in Dr. Norko rendering a diagnosis of organic personality syndrome, and where the sole source of evidence regarding Holladay's 'rages' is Holladay himself and his family and friends, Dr. Norko's diagnosis suffers from lack of credibility.
 "Further, Dr. Norko had no physical or medical proof of any organicity. According to the DSM-III-R, there must be 'evidence from the history, physical examination, or laboratory test of a specific organic factor (or factors) judged to be etiologically related to the disturbances.' As the primary evidence available to Dr. Norko of the historical nature is derived from Holladay himself, the only lab results Dr. Norko has would be the IQ test, and Dr. Norko has no physical evidence whatsoever. Dr. Norko admitted that a discrepancy between the verbal and performance scales on the Wechsler test was an indication for further investigation into the possibility of organicity rather than a conclusion unto itself that organicity exists. Yet Dr. Norko did not do any further investigation. This Court finds that Dr. Norko's evidence *Page 683 
of Holladay's rages was unbelievable; his evidence of historical accounts of injury to Holladay had uncertain origin at best and, most commonly, had unreliable origin, particularly where it was from Holladay's self-reporting; that Dr. Norko conducted a physical test, that being a screening neurological examination, and found no evidence of physical abnormality; that Wechsler sub-test discrepancies by themselves did not constitute conclusive laboratory test results of a specific organic factor; and that, therefore, Dr. Norko's diagnosis of organic personality syndrome, explosive type, is unworthy of merit.
 "Dr. Norko also concluded that Holladay meets the criteria for alcohol abuse. The only information Dr. Norko had regarding alcohol use or abuse came from the self-reporting of Holladay. The record reflects that Holladay's self-reporting of alcohol use and abuse varied from time to time. Dr. Norko conceded that there were several reports in the records which showed that Holladay denied alcohol abuse, and others that said he 'did have alcohol abuse as well as some other substance abuse.' Dr. Norko discounted the possibility that Holladay had been lying in putting his best foot forward to suit the situation. Instead, Dr. Norko suggested that Holladay had not been asked the questions regarding alcohol abuse in a proper way. The State then referred Dr. Norko to page 76 of the deposition of Holladay, which is in evidence, wherein the State asked Holladay a series of questions dealing with alcohol consumption. The questions are straight-forward and clear, and Holladay appeared to have no problem answering them, denying much alcohol use as a teenager or thereafter. Dr. Norko, on cross-examination, had answered 'yes' to the question '. . . Following the question about alcohol and drug abuse — "Do you drink or have you ever?" — would you say that that is appropriately clear for Glenn Holladay's understanding?' Yet Dr. Norko refused to concede that Holladay understood the questions and knowingly answered them. This position is outrageous in the light of all the evidence, and this Court finds Dr. Norko's testimony to be without credibility and without merit.
 "Holladay is not entitled to relief on his claim that trial counsel failed to investigate and prepare. This Court finds that trial counsel's performance in investigating and preparing for trial was not deficient. This Court further finds that the mental state testimony presented by Holladay does not establish any mitigating circumstances, nor present any testimony of value that was not already known and considered by the sentencing jury and court."
An examination of the record substantiates the trial court's findings and establishes that the appellant's trial counsel conducted a thorough investigation, discovered certain mitigating circumstances,[3] and presented this evidence to the court and to the jury. There is no evidence to indicate that the appellant's trial counsel's performance was deficient or that the appellant was prejudiced by his counsel's actions.Strickland v. Washington, supra.
 C.
The appellant argues that his trial counsel was ineffective during the direct examination of him at the guilt phase of his trial, because, he says, evidence was elicited that he was an escapee when he committed these murders.[4] The trial court found that the decision by the appellant's trial counsel to elicit this testimony on direct examination was a sound strategic decision, based on the testimony of one of the appellant's trial attorneys during the Rule 20 hearing. She testified that both she and her co-counsel advised the appellant not to take the stand, because *Page 684 
by doing so, the State could elicit testimony concerning the appellant's extensive criminal record on cross-examination. However, when the appellant insisted on testifying, his trial attorneys decided to elicit testimony concerning the escape on direct examination in order to lessen the impact it might have if it were brought out on cross-examination. The trial court properly found that this determination was a sound tactical decision not to be disturbed by second-guessing or with the benefit of hindsight. Strickland v. Washington, supra,466 U.S. at 690, 104 S.Ct. at 2066.
 D.
The appellant argues that his trial attorneys were ineffective for failing to object at trial or on appeal to certain allegedly improper prosecutorial arguments about the evidence; specifically, the prosecutor's personal belief as to the appellant's guilt and his comments concerning the excellent preparation of the State's case and the lack of credibility of the appellant's testimony. As to this claim, the trial court found that because the prosecutor's comments were not improper, being reasonable inferences from the evidence, the appellant's attorneys were not ineffective for failing to object to these comments. Based on the record, the trial judge's finding was correct.
 E.
The appellant argues that his attorneys were ineffective for failing to object at trial or on appeal to various comments made by the prosecutors during their closing arguments at the penalty phase. The appellant grounds this impropriety on the holdings in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529,96 L.Ed.2d 440 (1987), and South Carolina v. Gathers,490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). However, as the trial court correctly noted in denying this claim, those cases have been overruled by the United States Supreme Court. Paynev. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720
(1991). Furthermore, the trial court found the prosecutors' comments to be proper inferences from the evidence.
In order to constitute reversible error, improper argument must be pertinent to the issues presented, or its natural tendency must be to influence the jury's findings. Kuenzel v.State, 577 So.2d 474, 489 (Ala.Cr.App. 1990), affirmed,577 So.2d 531 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (1991). Moreover, in order to result in a denial of due process, the arguments must have so infected the trial with unfairness, taken in the context of the whole trial, that the appellant is entitled to a new trial. See Darden v.Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471,91 L.Ed.2d 144 (1986). A review of the record supports the trial court's findings that the comments fell within the wide range to be allowed prosecutors in making exhortations to the jury. Thus, the appellant's attorneys were not ineffective for failing to object on this ground.
 F.
The appellant argues that his attorneys were ineffective for failing to challenge at trial or on appeal the prosecutor's cross-examination of him, wherein, he says, he was asked suggestive and prejudicial questions, which the prosecutor had no basis for asking. However, the trial court found that the prosecutor had a good faith basis for his cross-examination of the appellant and one of the appellant's trial attorneys testified, during the post-conviction hearing, that she did not find any of the prosecutor's questions during the cross-examination to be objectionable. Based on the record, the trial court properly determined that the performance of the appellant's attorneys was not outside the wide range of reasonable professional conduct.
A review of the record clearly establishes that the appellant has failed to show that but for his attorney's failure to object, he would not have been convicted of this offense.
 G.
The appellant argues that his attorneys were ineffective for failing to challenge at trial or on appeal the trial court's instructions to the jury concerning mitigating circumstances, because the appellant alleges that this instruction limited the jury's consideration of mitigating circumstances to those *Page 685 
presented during the penalty phase. However, as noted by the trial court, the appellant's claim is based on an isolated portion of the jury charge, which was taken out of context. In rejecting this claim, the trial court stated:
 "This Court finds this claim meritless to the point of frivolity. The trial court expressly instructed the jury as follows:
 " 'You should also consider any evidence that was presented during the guilt phase of the trial that is relevant to the existence of any aggravating or mitigating circumstances."
In evaluating the propriety of a jury charge, it is clear that a single charge must not be viewed in isolation, but in the context of the entire charge. Kuenzel v. State, supra, at 517. Because the charge was not improper, the appellant's attorneys were not ineffective for failing to object on this ground.
 H.
The appellant argues that his attorneys were ineffective for failing to challenge at trial or on appeal a jury instruction which, he contends, the jurors could have construed to require a unanimous agreement in order to find mitigating circumstances, in violation of Mills v. Maryland, 486 U.S. 367,108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The trial court properly found that the appellant's attorneys were not ineffective for failing to object to this charge, because the charge was not improper. In so finding, the trial court stated:
 "The court instructed the jury that the State had the burden of proving aggravating circumstances beyond a reasonable doubt to 'each and every one' of the jurors. No such statement was made regarding mitigating circumstances. Instead, the trial court correctly instructed the jury that mitigating circumstances were not burdened by the same stricture as were aggravating circumstances because the law is that the jury can consider as mitigating any circumstances it finds or any evidence that the jury heard that might 'in your mind tend to mitigate.' If there was a factual dispute about the existence of a mitigating circumstance, the jury was told the State had the burden of disproving it, so the jury was to consider that the mitigating circumstance existed unless the State proved otherwise.
 "Nothing in the jury charge indicated that the jury's findings with regard to mitigating circumstances had to be unanimous, and there was nothing in the verdict form that suggested such a requirement. As the appellate court, examining a similar charge, held in Kuenzel v. State, 577 So.2d 474, 521-522 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala. 1991), the jurors could not have reasonably believed that they were required to agree with unanimity on the existence of any mitigating circumstances. Holladay's claim is, therefore, rejected."
This finding by the trial court is supported by the record and is therefore proper.
 I.
The appellant argues that his attorneys were ineffective for failing to challenge the prosecution's exercise of peremptory challenges against black veniremembers. The record indicates that the appellant is white. The appellant's trial was held in June 1987, four years before the release of Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (wherein the United States Supreme Court held that white defendants may raise a challenge based on Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The opinion on the appellant's direct appeal to this court was released in 1988 and the decisions pursuant to his petitions for writ of certiorari to the Alabama Supreme Court and to the United States Supreme Court were released in 1989, all prior to Powersv. Ohio.
It is clear that the constitutional guaranty of effective counsel does not require a defense attorney who can foresee future decisions. Thus, in Floyd v. State, 571 So.2d 1221
(Ala.Cr.App. 1989), reversed on other grounds, 571 So.2d 1234
(Ala. 1990) where an appellant challenged his counsel's effectiveness on collateral appeal for not having raised aBatson objection, prior to the issuance of the Batson opinion, this court held:
 "Moreover, an attorney who did not raise a Batson objection at a pre-Batson trial cannot be said to have been ineffective. Poole v. United States, 832 F.2d 561, *Page 686 
565 (11th Cir. 1987), cert. denied, 488 U.S. 817, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988). The Court of Appeals for the Eleventh Circuit has also held that '[r]easonably effective representation cannot and does not include a requirement to make arguments based on how the law may develop.' Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir.), modified on other grounds, 833 F.2d 250 (11th Cir. 1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988)."
Id., at 1226-27. Because the trial and direct appeals in this case pre-dated Powers v. Ohio, supra, his attorneys were not ineffective for failing to make a Batson challenge.
 J.
The appellant argues that his trial attorneys were ineffective for failing to introduce additional evidence to support his motion for a change of venue. In regard to this claim, the trial court made the following findings:
 ". . . Holladay alleged that former counsel were ineffective for not introducing into evidence, in support of his motion for a change of venue, the following:
 "Numerous and severally [sic] prejudicial newspaper articles, radio station broadcasts, and television broadcasts; records maintained by various law enforcement agencies reflecting numerous citings and inquiries regarding Holladay; information demonstrating the number of Etowah County residents who likely received the relevant radio and television broadcasts after the murders; and information demonstrating the increased number of gun sales in Etowah County after the murders and before trial. This Court finds that these claims are without merit and wholly unsupported by the record.
 "Trial counsel filed a motion for change of venue on April 17, 1987. On May 28, 1987, a hearing on the motion was held in which trial counsel called sixteen witnesses and introduced twenty-seven exhibits. The hearing and argument on this motion consisted of over 200 pages of trial transcript, and the twenty-seven exhibits spanned eight full trial transcript volumes with 200 pages per volume, and a substantial portion of two more volumes. The exhibits include newspaper clippings, newspaper circulation records, television scripts, television audience market share records, radio coverage maps, news tapes, radio broadcasts transcripts, police radio logs, sheriff's office radio dispatch logs, pistol permit records, and pistol purchase records.
 "Subsequent to this hearing, trial counsel filed a motion for extraordinary expenses to hire a surveyor to measure the effects of pretrial publicity on the public, a law clerk to assist the surveyor in writing the resulting report, and an expert in the field of jury selection. Trial counsel also submitted a brief in support of their motion for change of venue.
 "The record speaks for itself. It is inconceivable that trial counsel could have introduced any additional evidence that would have been helpful to Holladay's case."
The appellant raised the propriety of the trial court's denial of his motion for a change of venue on direct appeal, and that denial was upheld by this court. Holladay v. State, supra, at 125-26. The record clearly supports this action by the trial court and its finding that trial counsel vigorously pursued the motion for change of venue.
 K.
The appellant argues that his attorneys were ineffective for failing to challenge at trial or on appeal the prosecutor's statement made during his closing argument at the guilt phase that the jury could not consider whether the murders were committed in the heat of passion because the appellant had denied any involvement in the murders. One of the appellant's attorneys, during the Rule 20 hearing, explained why she did not raise this objection at trial as follows:
 "Of course, we argued the jury — argued the case to the jury in the guilt phase after a charge conference was had with the court. And during the charge conference I attempted to get the judge to charge on the crime of passion. He denied those charges. I was foreclosed from that argument *Page 687 
as a result of the rulings by the court. And so, I believe under those circumstances the district attorney's statement was a correct statement of the law of the facts of the case."
Based on this explanation, any objection on this ground would have been futile and in conflict with the trial court's ruling. Therefore, there was no error or prejudice to the appellant in failing to raise this matter at trial or on appeal.
 L.
The appellant raises the issue, without any supporting argument, that his counsel on appeal was ineffective for failing to challenge the trial court's denial of his request to further testify after the parties had rested their cases. However, in denying this claim, the trial court noted that one of the appellant's trial attorneys testified that the appellant had wanted to return to the witness stand to deny having been in a fight with his former wife and one of his victims, Rebecca Ledbetter Holladay. The alleged fight had occurred some months before the murder. The record indicates that the appellant's trial counsel raised this issue before the trial court, but that the trial court denied the request to allow Holladay to testify further. During the Rule 20 hearing, the appellant's trial counsel testified that this testimony would not have been relevant or helpful to the appellant's case. She testified that she therefore did not raise this matter on appeal, because she raised only those issues that she believed were most likely to result in a reversal. This decision was a matter of strategy and appellate counsel is not required to raise every conceivable issue on appeal. McCoy v. Lynaugh, 874 F.2d 954,965-66 (5th Cir. 1989). The appellant has failed to establish that counsel's performance was ineffective under the test established in Strickland v. Washington, supra.
 M.
The appellant argues that his attorneys were ineffective in not challenging at trial or on appeal the trial court's failure to charge the jury at the penalty phase on all of the statutory mitigating circumstances. The record indicates that the trial judge charged the jury as to three statutory mitigating circumstances. He also charged that a mitigating circumstance did not have to be included in that list, but rather that the jury could consider anything that it believed tended to mitigate. Although the appellant argues that the entire list of statutory mitigating circumstances should have been read to the jury, the trial court found that, because there was no evidence supporting these non-charged mitigating circumstances, there was no prejudice to the appellant in not reading them.
There is no requirement that the entire list of statutory mitigating circumstances be read to the jury in every capital case, where there is no evidence meriting such a charge. There was no request that the trial court read this list, and because the uncharged statutory mitigating circumstances were irrelevant, reading them to the jury may have been confusing to the jury. See e.g. Whisenhant v. State, 555 So.2d 219, 228
(Ala.Cr.App. 1988), affirmed, 555 So.2d 235 (Ala. 1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990). Because a charge on all the statutory mitigating circumstances was not merited, the appellant's counsels were not ineffective for failing to object on this ground.
 III
The appellant argues that the trial court improperly adopted the State's proposed findings of fact and conclusions of the law, submitted after the Rule 20 hearing, thereby denying him a full and fair hearing.
 "While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990)." *Page 688 
Wright v. State, 593 So.2d 111, 117-18 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 113 S.Ct. 132, 121 L.Ed.2d 86
(1992).
In the present case, the trial court's findings of fact and conclusions of law are supported by the record and are not clearly erroneous.
 IV
The appellant argues that, because he did not receive sufficient funds to hire experts for his Rule 20 hearing, he was denied a full and fair hearing of his post-conviction claims. The record indicates that the appellant requested a maximum of $5000 per expert to hire a psychiatrist, a psychologist, a social worker, and a neurologist. The trial court entered an order granting the appellant "permission to secure the services of such mental health experts as he deems necessary in support of his post-conviction petition" and authorizing the expenditure of funds of up to $5000. At the evidentiary hearing, the appellant presented the testimony of a psychologist and a psychiatrist, but attempted to admit affidavits and resumes of a social psychologist and neurologist, in order to show the type of testimony and evidence he could have presented had he received sufficient funds. The State responded that the appellant could have spent the allotted funds to hire a social worker and neurologist, but elected to spend the funds elsewhere.
Despite the appellant's claims, he was not prejudiced by the limiting of the amount to $5000 for all experts. The evidence that the appellant sought to introduce was already available from other evidence that had been admitted. Moreover, this court has held that the Due Process Clause does not require a trial court to approve funds to hire experts to testify at a Rule 20 hearing. Hubbard v. State, 584 So.2d 895, 900-01
(Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 896,116 L.Ed.2d 798 (1992). Therefore, there was no error in the trial court's actions.
AFFIRMED.
All Judges concur.
* Certain documents in the record carry the name "Glen."
[1] Cf. Gibson v. State, 580 So.2d 38 (Ala.Cr.App. 1990) (wherein the appellant's claim pursuant to Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), raised in both petitioners' Rule 20 petitions was procedurally barred where the issue could have been, but was not, raised at trial or on direct appeal, because the defendants filed their petitions with the trial court before oral argument on direct appeal and before the filing of reply briefs.)
[2] References to page numbers in the record have been omitted from the trial court's findings in this excerpt and in those to follow.
[3] The trial court charged the jury on the appellant's family background, evidence of mental retardation, and history of abuse and neglect. Moreover, the trial court found these factors to exist and weighed them as nonstatutory mitigation.
[4] Although the appellant also argues in brief that his counsel was ineffective for failing to obtain a jury instruction limiting the jury's consideration of the fact that the appellant was escaped, this allegation was not raised in the Rule 20 petition, was never raised before the trial court, and, therefore, is procedurally barred.