10 So.3d 1037 (2004)
Michael Shannon TAYLOR
v.
STATE of Alabama.
CR-02-0706.
Court of Criminal Appeals of Alabama.
August 27, 2004.
Rehearing Denied October 22, 2004.
*1042 Mitchell J. Briskey, New York, New York; Robert Chandler Davis, Gadsden; and Lorca Morello, Brooklyn, New York, for appellant.
William H. Pryor, Jr., atty. gen., and Margaret Mary (Missy) Fullmer, deputy atty. gen., for appellee.
BASCHAB, Judge.
On April 14, 1993, the appellant, Michael Shannon Taylor, was convicted of three counts of capital murder for the killings of Ivan Moore and Lucille Moore. Two of the counts were made capital because he committed the murders during the course of a robbery, see § 13A-5-40(a)(2), Ala. Code 1975, and the third was made capital because he murdered two or more people pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975. On April 14, 1993, the jury unanimously recommended that he be sentenced to death. On May 5, 1993, the trial court accepted the jury's recommendation and sentenced him to death. We affirmed his convictions, see Taylor v. State, 666 So.2d 36 (Ala.Crim.App.1994), and sentence, see Taylor v. State, 666 So.2d 71 (Ala.Crim. App.1994); the Alabama Supreme Court affirmed his convictions and sentence, see Ex parte Taylor, 666 So.2d 73 (Ala.1995); and the United States Supreme Court denied *1043 his petition for certiorari review, see Taylor v. Alabama, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996). This court issued a certificate of judgment on August 8, 1995.
On March 3, 1997, the appellant filed a Rule 32 petition, challenging his convictions and sentence, and he amended his petition on November 20, 1998, and July 13, 1999. The circuit court dismissed some of the claims as procedurally barred, conducted an evidentiary hearing on the remaining claims, and subsequently denied the petition. This appeal followed.
On direct appeal, the Alabama Supreme Court set forth the relevant facts of this case as follows:
"On November 4, 1991, Taylor, then a 19-year-old high school graduate who had returned to his hometown of Gadsden while absent without leave from the Navy, solicited a ride to the home of the Moores, an elderly couple he knew. Taylor left a duffel bag outside the house and asked Mr. Moore, who was age 83, if he could use the telephone. Once inside, Taylor pretended to make a telephone call, and then Mr. Moore asked him if he would like something to drink. Taylor said he would, and Mr. Moore got him a glass of water and a doughnut. After Taylor had eaten, Mr. Moore asked him if he would like something else. Taylor said he would, and Mr. Moore went back into the kitchen.
"Taylor then went outside and removed a metal bar from his duffel bag. Taylor followed Mr. Moore into the kitchen, and, as the man bent into the refrigerator, Taylor began to strike him about the head with the metal bar. Mr. Moore fell to the floor. Mrs. Moore, who was age 79, entered the kitchen and bent down to see what was wrong with her husband. Taylor then struck her repeatedly about the head with the metal bar. As Mr. Moore attempted to crawl away and get up, Taylor again struck him with the bar. Taylor then took Mr. Moore's wallet, Mrs. Moore's purse, their checkbook, and their 1986 Cadillac automobile. He drove to Birmingham, cashed several checks made out to his name for a total of about $1500, and made several clothing and jewelry purchases at the Galleria shopping mall.
"The Moores were discovered in their home by a neighbor two days after their beating. Mr. Moore was dead at that time; Mrs. Moore was then unconscious, but later died. The cause of both their deaths was severe blunt force injuries to their heads, which had fractured their skulls. Mr. Moore had been struck with the bar approximately 17 times and had 11 wounds on his head; Mrs. Moore had been struck with the bar at least 10 times.
"Taylor was arrested outside the Galleria shopping mall, after he had entered the Moores' vehicle and attempted to drive away. Upon being returned to Gadsden, Taylor confessed to beating the Moores during the course of a robbery. It is disputed whether he stated, while giving his confession, that he had intended to kill the Moores."
Ex parte Taylor, 666 So.2d at 75-76.
The appellant raises several arguments, including claims that his attorneys rendered ineffective assistance during the proceedings. In reviewing the circuit court's rulings on the appellant's arguments, we apply the following principles:
"`"[T]he plain error rule does not apply to Rule 32 proceedings, even if the case involves the death sentence." Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992).' Cade v. State, 629 So.2d 38, 41 (Ala.Crim.App.1993), cert. denied, [511] *1044 U.S. [1046], 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994).
"In addition, `[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.' State v. Tarver, 629 So.2d 14, 19 (Ala.Crim.App. 1993)."
Brownlee v. State, 666 So.2d 91, 93 (Ala. Crim.App.1995).
"To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"`The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances.... "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.'
"Duren v. State, 590 So.2d 360, 362 (Ala. Cr.App.1990), aff'd, 590 So.2d 369 (Ala. 1991), cert. denied, [503] U.S. [974], 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992).
"When this court is reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Luke v. State, 484 So.2d 531, 534 (Ala.Cr.App.1985). The burden is on the appellant to show that his counsel's conduct was deficient. Luke.

"`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065-66. (Citations omitted.) Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.Cr. App.[Ala.]1987).
"Initially we must determine whether counsel's performance was deficient. We must evaluate whether the action or inaction of counsel of which the petitioner complains was a strategic choice. `Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable....' Lawley, 512 So.2d at 1372. This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Falkner v. State, 586 So.2d 39 (Ala.Cr.App.1991)."
*1045 Hallford v. State, 629 So.2d 6, 8-9 (Ala. Crim.App.1992).
"In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that `[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the `prejudice' prong, for `[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."
Thomas v. State, 511 So.2d 248, 255 (Ala. Crim.App.1987) (footnote omitted).
"Furthermore, to render effective assistance, an attorney is not required to raise every conceivable constitutional claim available at trial and on appeal. Holladay v. State, 629 So.2d 673 (Ala.Cr. App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994); McCoy v. Lynaugh, 874 F.2d 954, 965-66 (5th Cir.1989). Rather, counsel must be given some discretion in determining which claims possibly have merit, and thus a better chance of success, and which claims do not have merit, and thus have little chance of success. Heath v. State, 536 So.2d 142 (Ala.Cr.App.1988); Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)."
Davis v. State, 720 So.2d 1006, 1014 (Ala. Crim.App.1998). Finally,
"[t]he purpose of ineffectiveness review is not to grade counsel's performance. See Strickland [v. Washington ], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984)]; see also White v. Singletary, 972 F.2d 1218, 1221 (11th Cir.1992)(`We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.'). We recognize that `[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.' Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or `what is prudent or appropriate, but only what is constitutionally compelled.' Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987).
". . . .
"... Because the reasonableness of counsel's acts (including what investigations are reasonable) depends `critically' upon `information supplied by the [petitioner]' or `the [petitioner]'s own statements or actions,' evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims. Strickland, 104 S.Ct. at 2066. `[An] inquiry into counsel's conversations with the [petitioner] may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.' Id. (`[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue *1046 those investigations may not later be challenged as unreasonable.')."
Chandler v. United States, 218 F.3d 1305, 1313-19 (11th Cir.2000) (footnotes omitted).

I.
The appellant argues that the circuit court improperly prevented him from presenting claims that his attorneys rendered ineffective assistance during the guilt phase of his trial. The circuit court addressed each of the claims to which the appellant refers and denied each of them because this court addressed the underlying substantive claims on direct appeal. In fact, with regard to the vast majority of the claims, this court found that there was not any error, much less any plain error, on direct appeal. In support of its conclusion, the circuit court relied on the following language from Williams v. State, 783 So.2d 108, 133 (Ala.Crim.App.2000):
"`[B]ecause we determined that the remarks did not constitute plain error even if objectionable, appellant cannot relitigate the issue under the guise of ineffective assistance of counsel in a post-conviction proceeding. A finding of no manifest injustice under the "plain error" standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).'
"State v. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App.1996) (footnote omitted)."
The appellant argues that the circuit court's reliance on Williams is misplaced because Clark has been abrogated by Deck v. State, 68 S.W.3d 418 (Mo.2002). However, our holding in Williams was not solely based on Clark. Rather, we also cited Thomas v. State, 766 So.2d 860, 953 (Ala. Crim.App.1998), aff'd, 766 So.2d 975 (Ala. 2000), which was authored by Judge Patterson, in which this court held:
"However, Thomas has failed to establish the two prongs of Strickland v. Washington. In implicitly rejecting the underlying substantive issue as failing to present any plain error, Rule 45A, Ala. R.App. P., the Alabama Supreme Court implicitly found that the alleged error did not or probably did not adversely affect the substantial right of Thomas. Thus, we must concur with the attorney general that Thomas's ineffective trial counsel argument fails because, by virtue of the Alabama Supreme Court's implicit ruling, Thomas cannot satisfy the prejudice prong of Strickland."[1]
Although Clark has been abrogated, Thomas has not, and our holding in Williams therefore remains valid.[2] The *1047 analysis used in reviewing for plain error is substantially the same as the analysis that is used to determine prejudice under Strickland. Clearly, then, when this court and/or the Alabama Supreme Court has specifically addressed and rejected a substantive claim on direct appeal, whether reviewing for plain or preserved error, a petitioner in a Rule 32 proceeding who raises an ineffective-assistance claim based on that same substantive claim cannot establish prejudice under Strickland.[3] Because it appears that the appellant was simply attempting to relitigate guilt-phase claims, which had previously been raised and specifically addressed and rejected on direct appeal, under the guise of ineffective-assistance claims, we do not find that the circuit court erred in this regard.

II.
The appellant also argues that the circuit court denied him a full and fair Rule 32 hearing when it admitted evidence that was obtained in violation of his constitutional rights. Specifically, he contends that the introduction of exhibits from his attorneys' work files, including statements he had made to his attorneys, violated his attorney-client privilege and his Fifth Amendment right against self-incrimination. We addressed and rejected similar arguments in State v. Click, 768 So.2d 417, 420-22 (Ala.Crim.App.1999), as follows:
"The great weight of the United States Supreme Court's opinions supports the proposition that once a defendant has been convicted for a crime and his direct appeal from that conviction is final, a defendant no longer has a privilege against self-incrimination. The United States Supreme Court recently in Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), addressed whether the Fifth Amendment privilege applies to sentencing hearings. The Court held that a sentencing hearing is a crucial part of the criminal trial; thus, the defendant has the protection of the Fifth Amendment at that stage. However, the Court noted, `It is true, as a general rule, that where there can be no further incrimination., there is no basis for the assertion of the privilege. We conclude that that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final.' The Court also cited with approval its earlier decision in Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), in which that Court stated that there is `weighty authority' for the proposition that once a person is convicted he no longer has a privilege against self-incrimination. 364 U.S. at 513, 81 S.Ct. 260. Also, the United States Supreme Court has recognized that an inmate who voluntarily participates in a clemency proceeding has no right to invoke his Fifth Amendment privilege against self-incrimination, because his testimony is not `compelled.' See Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). In Woodard, the Court stated:
"`Long ago we held that a defendant who took the stand in his own *1048 defense could not claim the privilege against self-incrimination when the prosecution sought to cross-examine him. Brown v. Walker, 161 U.S. 591, 597-98, 16 S.Ct. 644, 647, 40 L.Ed. 819 (1896); Brown v. United States, 356 U.S. 148, 154-55, 78 S.Ct. 622, 626-27, 2 L.Ed.2d 589 (1958). A defendant who takes the stand in his own behalf may be impeached by proof of prior convictions without violation of the Fifth Amendment privilege.'
"523 U.S. at 286-87, 118 S.Ct. 1244.
"Click voluntarily filed the postconviction petition attacking his conviction and sentence. In Alabama, a postconviction proceeding is a voluntary action commenced by a defendant, not a criminal action commenced by the state against a defendant. Certainly, the voluntary nature of the action lends further support for the conclusion that postconviction proceedings are not `compelled' proceedings within the meaning of the Fifth Amendment. See Woodard.

"Here, Click has been convicted and sentenced, and his conviction has been affirmed on direct appeal. He voluntarily filed a postconviction petition. The possibility that Click will face criminal liability by answering questions about his trial counsel's performance in this postconviction proceeding is `remote and improbable.' See [State v.] Barone, [329 Or. 210, 986 P.2d 5 (1999)]. Certainly, the State would be put in an untenable position if it could not call the petitioner to the stand to refute the allegations that he alone has asserted in his petition. The drafters of Rule 32, Ala. R.Crim. P., were aware of such possible difficulties when they drafted Rule 32.9(b), which specifically gives the State the right to call the petitioner as a witness at the hearing.
"We hold that, under the circumstances presented by this case, the Fifth Amendment privilege against self-incrimination does not apply to Click's postconviction hearing testimony....
". . . .
"Click further argues that he should not be forced to testify because, he says, the matters which the State seeks to question him concerning will result in violating the attorney-client privilege. Click raised a multitude of allegations in his postconviction petition that his attorney's conduct, both at trial and on appeal, was ineffective. (See footnote 1, which enumerates the allegations made.) A postconviction petitioner who raises a Sixth Amendment claim of ineffective assistance of counsel `waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation.' United States v. Mansfield, 33 M.J. 972, 984 (A.F.C.M.R. 1991), review granted, 37 M.J. 246 (C.M.A.), aff'd, 38 M.J. 415 (C.M.A. 1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). McElroy's Alabama Evidence states:
"`If the client charges the attorney with misconduct, the privilege is lifted insofar as is necessary to enable the attorney to combat the charge. This would necessarily mean that the client could not base a lawsuit against the attorney upon the negligence of the attorney's advice and then object when the attorney attempts to testify as to the attorney's own version of what was said. This would open the door, of course, to only so much of the privileged matter that is relevant and necessary to the attorney's defense.'
"Charles W. Gamble, McElroy's Alabama Evidence, § 394.01(3) (5th ed.1996). See also Rule 502(d)(3), Ala. R. Evid., which provides that there is no *1049 attorney-client privilege `[a]s to a communication relevant to an issue of breach of duty by an attorney to the client or by a client to the client's attorney.' This argument is without merit."
Likewise, based on this court's reasoning in Ex parte Click, we conclude that the appellant's arguments regarding the introduction of exhibits from his attorneys' work files are without merit.

III.
The appellant next argues that the circuit court improperly adopted verbatim the State's proposed order.
"`While the practice of adopting the State's proposed findings of fact and conclusions of law is subject to criticism, the general rule is that even when the court adopts proposed findings and conclusions verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Cr. App.1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala. Cr.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'
"Wright v. State, 593 So.2d 111, 117-18 (Ala.Cr.App.1991), cert. denied, [506] U.S. [844], 113 S.Ct. 132, 121 L.Ed.2d 86 (1992)."
Holladay v. State, 629 So.2d 673, 687-88 (Ala.Crim.App.1992). The record does not indicate that the circuit court's findings are clearly erroneous. In fact, it supports those findings. Therefore, the appellant's argument is without merit.

IV.
The appellant next argues that he was denied a full and fair hearing because of a pattern of misconduct by the prosecutor.

A.
First, the appellant contends that the State did not timely serve him with documents. Although he makes general references to documents, he does not support his contention with specific facts and does not allege how he was prejudiced by any delay. Therefore, he has not established that he is entitled to relief in this regard.

B.
Second, the appellant contends that the State intimidated his expert by threatening him with criminal and civil penalties if he traveled to Alabama to conduct a psychological examination or testified during the evidentiary hearing. During the discovery phase of the Rule 32 proceedings, the State learned that Dr. Sanford Lewis Drob, a psychologist who was licensed by the State of New York, had been retained to evaluate the appellant. Although the State filed a motion for the circuit court to deny Drob access to the appellant, citing § 34-26-42, Ala.Code 1975, and asserting that Drob was not licensed to practice psychology in Alabama, the circuit court denied the motion. The State also indicated that it did not have the authority to comply with the appellant's request that it grant Drob immunity from prosecution because Drob was not a State witness. Nevertheless, Drob ultimately evaluated the appellant and testified during the evidentiary hearing. Although we do not condone what the State attempted to do to Drob, there is not any indication that the State violated the appellant's right to present witnesses in his defense.

*1050 C.
Third, the appellant contends that the State violated the Court's discovery order. Although he asserts that the State ignored the discovery order and that that deprived him of a fair hearing, he does not allege how the State did not comply with the order or how any noncompliance actually prejudiced him. Therefore, he has not established that he is entitled to relief in this regard.

V.
The appellant additionally argues that his sentence violates the United States Supreme Court's holding in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, he did not present this argument in his petition or either of the two amended petitions the circuit court allowed him to file. Rather, he raised it for the first time after the circuit court had ruled on his petition. Therefore, it is not properly before this court. See Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989).
Moreover, we have held that Ring does not apply retroactively to cases on collateral review. See Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003). Therefore, the appellant's argument is without merit.

VI.
Further, the appellant argues that his attorneys rendered ineffective assistance in numerous instances. Charles Hart and Kermit "Mac" Downs represented him at trial, and Hart and Downs, along with Bryan Stevenson of the Equal Justice Initiative of Alabama, represented him on direct appeal. Hart and Downs both testified during the evidentiary hearing on the appellant's petition.
Hart and Downs testified that they both had conducted extensive interviews with the appellant; that they had talked to his family members and friends; and that the evidence against the appellant was overwhelming. Hart testified that the appellant was not forthcoming and that he refused to talk about the specifics of the murders. Downs testified that the appellant told them that he had not been drinking or taking drugs on the day of the murder, and this was corroborated by a witness who dropped the appellant off at the Moores' house. Downs also testified that he and Hart had reports from two mental health experts who indicated that the appellant did not have any significant mental defects. He further testified that they decided to admit the appellant's participation in the murder because
"I know that the District Attorney is going to bring all this in. Why let him do that? Why let him drop the bomb in the jury's lap and horrify them? Why let him do that? Why not me ahead of time try to lessen the impact of this, telling the jury ahead of time how bad this is going to be. It's gruesome. It's gory.
"Try to get them to, at least, acknowledge I've been honest. I've been credible with them. So that when we get through this case and it comes in  And we know it's coming in. It's no secret. We know they're going to hear all that.
"So when it all comes in at the end of the case, after they've found him guilty in the Guilt Phase, I can stand up in front of the jury on the second phase with a straight face and say, `Ladies and gentlemen, I've told you how bad this was going to be. I didn't try to trick you. I didn't try to deceive you or hide anything from you. I've been credible and honest with you. And I'm being honest with you now when I tell you the right thing to do in this case is to give this young man Life Without Parole.'"
(R. 452-53.)
The appellant was evaluated at Taylor Hardin Secure Medical Facility before his *1051 trial. The two doctors who evaluated him concluded that there was not any evidence that he had any significant mental disease or defect. The record also shows that his IQ is 91.
Downs testified that it was a strategic choice to present evidence during the penalty phase that humanized the appellant. Hart and Downs presented 18 witnesses to testify as to mitigation during the penalty phase  3 of his former high school teachers, 8 friends, 4 family members, 1 minister, 1 youth leader at his church, and 1 police officer. His former teachers testified that he was respectful in school, that he was never a discipline problem, and that they were shocked to hear about his involvement in the murders. His friends and family members all testified that they were shocked to hear about the murders and his arrest. His parents testified that he had regularly attended church. Juanita Taylor, the appellant's mother, testified that the appellant had a normal childhood and normal development and had exhibited normal behavior growing up. Betty McGriff, his great-aunt, testified that he received an award for Christian Attitude and Good Sportsmanship at his church. A police officer who was present when the appellant confessed testified that, at the end of the confession, he had to ask the appellant if he was okay. During the penalty phase closing arguments, defense counsel pled for the appellant's life.

A.
First, the appellant contends that his attorneys rendered ineffective assistance because they did not object in numerous instances during his trial. Initially, we note that he makes reference to the instances, but he does not allege any facts to establish that his attorneys' performance was deficient and that he was prejudiced by such deficient performance. Therefore, he has not satisfied his burden under Strickland on this ground.
Moreover, the circuit court properly denied relief on this ground. Counsel testified that he objected when he deemed it appropriate so as not to detract from his credibility with the jurors. As we stated in Daniels v. State, 650 So.2d 544, 555 (Ala.Crim.App.1994):
"`"[E]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made."' Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App.1986). `Even though there were several instances where counsel could have objected, "that does not automatically mean that the [appellant] did not receive an adequate defense in the context of the constitutional right to counsel." Ex parte Lawley, 512 So.2d 1370, 1373 (Ala.1987).' O'Neil v. State, 605 So.2d 1247, 1250 (Ala.Cr.App.1992). As this Court observed in Graham v. State, 593 So.2d 162, 166 (Ala.Cr.App.1991):
"`The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards.'"
Therefore, the appellant is not entitled to relief on this ground.

B.
Second, the appellant contends that his attorneys rendered ineffective assistance, in part, due to allegedly inadequate compensation. To the extent he challenges the statutory limit on attorney fees in capital cases, his argument is procedurally barred because he could have raised it at trial and on appeal, but did not. *1052 See Rule 32.2(a)(3) and (a)(5), Ala. R.Crim. P. To the extent he raises an ineffective-assistance-of-counsel claim, his argument is without merit. Specifically, Hart testified during the evidentiary hearing that the statutory cap did not affect his work on the case. Therefore, the appellant has not satisfied his burden under Strickland on this ground.

C.
Third, the appellant contends that his attorneys rendered ineffective assistance because they did not conduct an adequate pretrial investigation. Specifically, he asserts that counsel did not request funds for experts to assist in developing a mental health defense and that Drob testified that the pretrial mental health reports were incomplete.
During the evidentiary hearing, Drob testified that the appellant was immature, had coping deficits, and did not have the ability to process emotions. The State presented the expert testimony of Dr. Glen David King, a clinical and forensic psychologist, in rebuttal. King testified that, based on his evaluation, the appellant did not have any significant psychological disorder or mental condition. Therefore, the evidence regarding the appellant's mental condition was conflicting.
In its order denying the petition, the circuit court made the following findings regarding this contention:
"At the evidentiary hearing, counsel for Taylor attempted to establish ineffective assistance of trial counsel by showing that they should have done something more or something different instead of showing that no reasonable attorney would have done what Hart and Downs did given the facts and circumstances of this particular case. At the evidentiary hearing, Taylor's primary witness was Dr. Drob. The bulk of Drob's testimony was that, at the time of Taylor's trial, there was, in his opinion, evidence that he suffered from certain mental illnesses that could have been considered by the jury and the court in mitigation. Though the Court allowed Drob to express his opinion about what he considered to be mitigating, the Court is aware that such testimony would not have been permitted at Taylor's trial. See, Waters v. Thomas, 46 F.3d at 1506, (holding that no mental health expert `is competent to express an opinion about whether a particular set of facts constitutes a mitigating circumstance' because `that would invade the province of the judge and jury'). Further, Dr. King testified for the State that he saw no evidence that Taylor suffered from any of the mental illnesses described by Drob.
". . . .
"Moreover, even assuming, arguendo, that trial counsel had found and presented a witness that would have testified at trial in the manner that Drob did at the evidentiary hearing, the Court finds that `there is no reasonable probability that the balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different.' Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir.2001). The Grayson court concluded that:
"In light of the brutal nature of this crime against an elderly victim and the specific findings made by the court that sentenced Grayson to death, we find no reasonable probability that the mitigating circumstances gathered and presented in connection with Grayson's state habeas proceedings would have altered the balance of aggravating and mitigating factors in this case."

*1053 "Grayson v. Thompson, 257 F.3d at 1227. Likewise, in light of Taylor's brutal attack upon and murder of an elderly couple, the Court finds no reasonable probability that the presentation of psychological evidence such as that presented at Taylor's evidentiary hearing would have changed the jury's recommendation. Further, the presentation of such evidence would not have altered this Court's findings that the aggravating circumstances outweighed the mitigating circumstances. This claim is without merit and is hereby denied by the Court."
(C.R. 649-52.) We agree with the circuit court's findings, and we adopt them as part of this opinion. Further, there is not any indication that Hart and Downs did not conduct a pretrial investigation. In this regard, Downs testified as follows:
"You look at mental disease or defect type defenses. We had reports from two experts. Both indicated that the defendant did not have any significant mental disease or defects.
"In addition, [Hart] and I had talked to various family members, numerous friends of the defendant. The almost universal response to the crime was shock, disbelief. He's always been a good kid. He's never done anything wrong.
"The normal stuff you look for to try to show that there might be some mental impairment, I didn't see.
"In addition, we had Michael's statements to us that at the time of the offense he had not been consuming alcohol, he had not been using any kind of drug. He didn't seem to offer any kind of reason for what he did.
"In addition, we had the statement of the individual named Clay that dropped Michael off at the house, that Michael did not appear to have been drinking, had not used drugs, appeared to be normal. So, there appeared to us to be zero information to show any sort of significant disease or defect."
(R. 450-51.) Clearly, the record shows that Hart and Downs investigated the case. Therefore, the appellant is not entitled to relief on this ground.

D.
Fourth, the appellant contends that his attorneys rendered ineffective assistance because they did not ensure that the record of the trial proceedings was completely transcribed. Specifically, he asserts that certain off-the-record discussions and the final striking of the jurors were not transcribed. In its order denying the petition, the circuit court stated:
"In Boyd v. State, 746 So.2d 364 (1999), the petitioner raised this exact claim on appeal. The Court of Criminal Appeals held that `Boyd's claim is speculative; he has not presented a single specific allegation suggesting that an incomplete record caused him to suffer prejudice.' Boyd v. State, 746 So.2d at 381. Likewise, Taylor failed to identify any issue raised on direct appeal, in his petition, or at his evidentiary hearing that was adversely decided because of an incomplete record. Taylor has failed to meet his burden of affirmatively proving that trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P."
(C.R. 612-13.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on this ground.

E.
Fifth, the appellant contends that his attorneys rendered ineffective assistance *1054 because they did not effectively argue for youthful offender treatment. However, during the evidentiary hearing, he did not present any evidence concerning this claim and did not question his trial attorneys about this claim. Therefore, the appellant did not satisfy his burden of pleading and proof with regard to this claim. See Rules 32.3 and 32.6(b), Ala. R.Crim. P.
Moreover, in Slaton v. State, 902 So.2d 102 (Ala.Crim.App.2003), we held that counsel did not render ineffective assistance by not requesting treatment as a youthful offender when they did not have any reason to believe that it would have been granted because the elderly victim was brutally raped and murdered. Here, based on the horrific facts surrounding the murders, counsel could have reasonably concluded that the appellant would not be granted youthful offender treatment in this case. Therefore, the appellant did not satisfy his burden under Strickland as to this claim.

F.
Sixth, the appellant contends that his attorneys rendered ineffective assistance because they did not adequately litigate the suppression hearing. Specifically, he contends that they "did not effectively challenge the admissibility of Mr. Taylor's confession, although it was the only direct evidence that Mr. Taylor had killed the Moores." (Appellant's brief at p. 45.) On direct appeal, this court stated:
"We also reject the appellant's claim that his inculpatory statements were the result of custodial interrogation that was `extremely coercive.' According to the appellant, improper threats were made; Mr. Taylor's request for an attorney was ignored; [and] Mr. Taylor had been drinking the evening of his arrest and was experiencing sleep deprivation at the time of his questioning.' Appellant's brief at 61. These contentions are simply not supported by the record. The State presented uncontradicted evidence that the appellant's statements were voluntary and that the officers complied with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)."
666 So.2d at 61. Because this court reviewed the voluntariness of the confession on direct appeal and found that the trial court had properly admitted it, the circuit court concluded that the appellant could not prove any prejudice in this regard. We agree with the circuit court that the appellant is not entitled to relief on this ground.

G.
Seventh, the appellant contends that his attorneys rendered ineffective assistance because they did not move to dismiss the multiplicitous charges against him. Specifically, he asserts that the third count of the indictment  killing two or more people pursuant to one course of conduct  was included in and duplicative of the first two counts of the indictment. On direct appeal, this court stated:
"The appellant contends that his conviction of one count of capital murder under Ala.Code 1975, § 13A-5-40(a)(10) (murder of two persons pursuant to a single course of conduct), and his conviction of two counts of capital murder under § 13A-5-40(a)(2) (murder during robbery), violate constitutional principles of double jeopardy. This issue is raised for the first time on appeal.
"This case does not involve multiple trials for the same offense. Nor does it concern a situation where a defendant is charged with more than one offense arising out of the same transaction, convicted of those offenses, and given separate sentences for each offense, triggering *1055 an analysis under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The appellant in this case was given only one sentence. None of these double jeopardy protections encompasses the circumstances of which the appellant complains. See Ex parte Giles, 632 So.2d 577, 584 (Ala. 1993), cert. denied, [512] U.S. [1213], 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). The guarantee `does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). See Jackson v. State, 516 So.2d 726, 761-63 (Ala.Cr.App.1985), affirmed on related part and remanded on unrelated part, 516 So.2d 768 (Ala.1986), appeal dismissed on return to remand, 516 So.2d 774 (Ala.Cr.App.1987). The appellant's conviction of three counts did not violate Ala.Code 1975, § 13A-1-8(b). See Ex parte Haney, 603 So.2d 412, 419 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993)."
Taylor, 666 So.2d at 70. Because the underlying substantive claim is without merit, there was not any basis for an objection by trial counsel. Therefore, the appellant is not entitled to relief in this regard.

H.
Eighth, the appellant contends that his attorneys rendered ineffective assistance because they did not object to the striking of jurors outside of their presence. In its order denying the petition, the circuit court made the following findings regarding this contention:
"Taylor contends that, because prospective jurors were excused off the record, he was deprived of an opportunity to challenge these excuses in violation of his constitutional right to a fair trial. Downs was briefly examined about his claim at the evidentiary hearing.
"... In Ex parte Pierce, 612 So.2d 516, 519 (Ala.1992), the Alabama Supreme Court held that:
"`[a] judge in a capital case may excuse members of the venire outside the presence of the defendant and his counsel for those reasons set forth in [Section] 12-16-63(b), [of the Code of Alabama (1975) ].'
"Taylor fails to allege any facts in his petition and presented no evidence at his evidentiary hearing that would affirmatively prove that any veniremember excused outside of his or his trial counsel's presence did not provide a valid excuse to the Court. The Court will not hold trial counsel ineffective on the basis of a silent record. See, Magwood v. State, 689 So.2d 959, 971 (Ala.Crim.App.1996). The Court finds that Taylor has failed to meet his burden of affirmatively proving that trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P."
(C.R. 613-14.) The record supports the circuit court findings, and we adopt them as part of this opinion.[4]

I.
Ninth, the appellant contends that his attorneys rendered ineffective assistance because they did not move for a change of venue and did not conduct individual voir dire examination. With regard to the claim that counsel did not move for a change of venue, the circuit court made the following findings:
"At the evidentiary hearing, Hart explained that he and Downs did not think *1056 a motion for change of venue would have been granted because Taylor's case did not generate more than normal news coverage. (H.R. 354) As an example, Hart testified that he had no recollection of editorials calling for Taylor `to be hung.' (H.R. 353) Hart also referred to the case of Holladay v. State, a capital murder case in Etowah County in which trial counsel's motion for change of venue was denied at trial and the trial court's ruling was upheld on appeal. Hart indicated that the Holladay case `had more publicity ... than we had in [Taylor's case].' (H.R. 355) On cross-examination, Hart testified that, because `there was no grounds to move Glen Holladay's case, then we figured if they never moved that case, they'd never move any case.' (H.R. 413)
"... Trial counsel's decision not to move for a change of venue was based on their personal knowledge that another case in Etowah County that had generated far more media coverage than Taylor's case did not receive a change of venue. Trial counsel is not required to file motions for which there is no factual basis. See, Boyd v. State, 746 So.2d 364, 395 (Ala.Crim.App.1999) (holding that `[c]ounsel cannot be said to be ineffective for not filing a motion for which there is no legal basis'). Taylor has failed to present any evidence that would affirmatively prove that trial counsel's performance was deficient or that he was prejudiced by trial counsel's failure to move for a change of venue. See also, Rule 32.3, A.R. Cr. P. This claim is without merit and is, therefore, denied by the Court."
(C.R. 598-99.) With regard to the claim that counsel did not conduct individual voir dire examination of the prospective jurors, the circuit court made the following findings:
"In paragraphs 37 and 38 on pages 14-16 of Taylor's second amended petition, he contends that, had his trial counsel conducted individual voir dire regarding pre-trial publicity:
"`the veniremembers would have acknowledged their familiarity with the facts, their preconceived opinions on guilt and punishment and other potential reasons rendering them unsuitable, and they would have been struck for cause or peremptory challenged by the defense.'
"(Taylor's second amended petition at p. 15) While the examination of Hart and Downs touched on this claim, it is based completely on conclusory allegations. (H.R. 353-354, 448) `Prejudice cannot merely be alleged; it must be affirmatively proved.' Williams v. State, 783 So.2d 108, 119 (Ala.Crim.App.2000). Taylor fails to identify in his petition any juror by name whose verdict was in any way adversely affected by pre-trial publicity. Taylor also failed to offer any testimony at his evidentiary hearing from any person that sat on his petit jury whose verdict was adversely affected by pre-trial publicity. The Court finds that Taylor has failed to meet his burden of affirmatively proving that trial counsel's performance was deficient or caused him to be prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P. Therefore, this claim is without merit and is denied by the Court."
(C.R. 609.) The record supports the circuit court's findings as to these contentions, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief on these grounds.

J.
Tenth, the appellant contends that his attorneys rendered ineffective assistance because they did not move to exclude certain *1057 veniremembers who indicated an inability to render a fair decision in the case.

1.
Initially, the appellant asserts counsel did not question veniremember I.R. as to her competency to sit on the jury. Specifically, he alleges that she was not able to understand the proceedings. With regard to this contention, the circuit court found:
"Taylor contends that trial counsel should have challenged [I.R.] because, according to Taylor, she was unable to understand the proceedings. The Court has reviewed page 626 of the trial record that Taylor cites in his petition. The Court disagrees with Taylor's interpretation of [I.R.'s] comment. The Court finds that [I.R.'s] response to the district attorney's question in no way indicated that she did not understand the nature of the proceedings. The Court finds that this claim is without merit; therefore, it is denied. See, Gibby v. State, 753 So.2d 1206, 1207-1208 (Ala.Crim. App.1999) (holding that a postconviction claim that is refuted by the record on direct appeal is without merit)."
(C.R. 611.) The record supports the circuit court's findings, and we adopt them as part of this opinion.

2.
Also, the appellant asserts that counsel did not question veniremember B.W. about her relationship to one of the State's witnesses. With regard to this contention, the circuit court found:
"Taylor contends trial counsel should have challenged [B.W.] for cause because her niece was married to Mike Garigues, one of the State's witnesses. [B.W.] indicated, however, that she would not give more belief or credibility to Garigues's testimony simply because he was married to her niece. (R. 625-626) The Court finds that his claim is without merit; therefore, it is denied. See, Gibby v. State, 753 So.2d 1206, 1207-1208 (Ala.Crim.App.1999) (holding that a postconviction claim that is refuted by the record on direct appeal is without merit)."
(C.R. 610.) The record supports the circuit court's findings, and we adopt them as part of this opinion.

3.
Finally, the appellant asserts that counsel did not question veniremembers B.P. and J.P. about whether the fact that they were mother and son would affect their ability to serve on the same jury. With regard to this contention, the circuit court found:
"Taylor contends that trial counsel was ineffective for permitting a mother and son to sit on his jury without inquiring whether `their relationship would affect their ability to exercise independent judgment in arriving at a verdict.' (Taylor's second amended petition at p. 16) Neither [B.P.] nor [J.P.] was called to testify at Taylor's evidentiary hearing. Taylor failed to present any evidence at his evidentiary hearing to affirmatively prove that [B.P. and J.P.'s] relationship to each other had any affect whatsoever on their verdict. See, Williams v. State, 783 So.2d at 119. The Court finds that this claim is without merit; therefore, it is denied."
(C.R. 612.) Section 12-16-150, Ala.Code 1975, which sets forth the grounds for removing a veniremember for cause, does not provide for removal simply because veniremembers are related to each other. Also, the appellant did not attempt to show how he was prejudiced by any such relationship. Therefore, he did not satisfy his burden of proof under Strickland and Rules 32.3 and 32.6(b), Ala. R.Crim. P., as to this claim.

*1058 K.
Eleventh, the appellant contends that his attorneys rendered ineffective assistance because they indicated that the Legislature could change the law on a sentence of imprisonment for life without the possibility of parole. The circuit court found that the record did not support this claim. The record shows that, when one veniremember asked if it was ever possible that the law could be changed while an inmate was serving a sentence of imprisonment for life without the possibility of parole, counsel stated, "I guess the Legislature could change it. I don't know that. I mean, I couldn't answer that question. As the law is now, as the law is as you'll hear this case, there's no parole possible. No review possible. That's about all I could tell you as a lawyer." (A.R. 744-45.) As the circuit court correctly found, counsel did not tell the jury that the law could change for the appellant's benefit. Therefore, the record does not support the appellant's argument, and he is not entitled to relief in this regard.

L.
Twelfth, the appellant contends that his attorneys rendered ineffective assistance because they conceded his guilt and that concession was a per se deprivation of counsel. With regard to this claim, the circuit court made the following findings:
"In Thompson v. State, 581 So.2d 1216, 1235 (Ala.Crim.App.1991), the Court of Criminal Appeals held that `it was a reasonable strategic decision [for trial counsel to] admit Thompson's limited guilt in opening statements in order to diminish the impact of the evidence presented during the trial'. Downs testified at the evidentiary hearing that he had considered and rejected numerous possible defenses based on the State's evidence against Taylor. These rejected defenses included innocence and mental disease or defects. (HR 450) Downs testified that Taylor had told him that he had not been using alcohol or drugs at the time of the offenses. (HR 451) Downs stated that he and Hart decided to concede the graphic and gruesome nature of the crime in an attempt to lessen the impact of the State's evidence. (HR 452) Downs stated that their trial strategy was to be honest with the jury in an attempt to establish credibility in order to get the jury to recommend that Taylor be sentenced to life imprisonment without parole. (HR 453) Although Downs indicated that if psychological mitigating evidence existed at the time of trial it might have changed his strategy, he did not indicate nor was he asked, how it might have changed trial counsels' strategy."
(C.R. 606-07.)
Although Alabama has had little occasion to address whether counsel renders deficient performance by conceding guilt, we have held that it is not per se ineffective assistance for counsel to concede a client's limited guilt. See Thompson v. State, 581 So.2d 1216 (Ala.Crim.App.1991). This appears to be consistent with the majority of other jurisdictions that have considered this question. See United States ex rel. Guest v. Page, (No. 95 C 5034, March 23, 2004) (N.D.Ill.2004) (not published in F.Supp.); United States v. Simone, 931 F.2d 1186 (7th Cir.1991); People v. Johnson, 128 Ill.2d 253, 131 Ill. Dec. 562, 538 N.E.2d 1118 (1989); People v. Walker, 167 Mich.App. 377, 422 N.W.2d 8 (1988), overruled on other grounds by People v. Mitchell, 456 Mich. 693, 575 N.W.2d 283 (1998); State v. Simpson, (No. 19797, February 13, 2004) (Ohio Ct.App. 2004) (unpublished); Brown v. State, 866 S.W.2d 675, 681 (Tex.Ct.App.1993).
*1059 In this case, counsel did not concede guilt as to every element of the offense. Specifically, the record shows that counsel contested the appellant's intent to kill the victims. In fact, during closing argument, counsel argued that the appellant's lack of intent was evidenced by the fact that, when he left the victims' house, he knew that Lucille Moore was still alive. (A.R. 1132.) Here, the appellant's attorneys were faced with the daunting task of representing a defendant who was absent without leave from the United States Navy, who was arrested while driving the victims' stolen vehicle, who was in possession of other items taken from the victims, and who confessed to savagely beating the victims with a barbell. Both attorneys testified during the evidentiary hearing that the evidence against the appellant was overwhelming, and Downs testified that it was their decision to admit his participation in the murder to diffuse the overwhelming evidence against him. Under these circumstances, we do not conclude that counsel's performance was deficient.

M.
Thirteenth, the appellant contends that his attorneys rendered ineffective assistance because they did not obtain his consent to concede his limited guilt during the guilt phase of the trial. However, he did not first present this argument to the circuit court. Therefore, it is not properly before this court. See Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989).

N.
Fourteenth, the appellant contends that his attorneys rendered ineffective assistance because they did not make numerous objections and challenges to the evidence presented during the guilt phase of his trial. In Stringfellow v. State, 485 So.2d 1238, 1242-43 (Ala.Crim.App.1986), this court stated:
"Most of the `errors' alleged by the appellant as evidence of ineffective assistance of counsel concern his trial attorney's not making enough objections to questions. As we observed in Brooks v. State, 456 So.2d 1142, 1145 (Ala.Cr.App. 1984), `effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.' Brooks, supra. To object to each question is to waste the time of everyone present. An attorney who objected to every question would be serving notice that, while he might hope to win his case on appeal, he had abandoned hope of winning at trial.
"`An accused is not entitled to error-free counsel.' Phelps v. State, 439 So.2d 727, 735 (Ala.Cr.App.1983); Mallory v. State, 437 So.2d 595 (Ala.Cr.App.1983). Upon examining the record, we are convinced that the trial attorney in the present case performed adequately and that the appellant was not denied the effective assistance of counsel."
485 So.2d at 1242-43. Finally, when the State questioned him about how he chose to make objections, Downs answered as follows:
"I think you, certainly, would try to pick the battles. In other words, don't object to just every little thing. If you object to everything during a trial, and you've done that fifty times, when you stand up at the close of that case, how are you going to try to tell the Court  I mean, tell the jury that you have been honest and candid and credible with them, if you've tried to keep out everything that *1060 the State offers? That's my theory on that."
(R. 539-40.)

1.
Initially, the appellant asserts that his attorneys rendered ineffective assistance because they did not challenge Officer Troy Higdon about an admission he made that was not included in his signed statement. Specifically, he alleges that Higdon stated during the suppression hearing that he did not remember the appellant being asked if he intended to kill the victims. However, during the trial, Higdon testified that the appellant said that he knew that the victims knew him and that he would have to kill them.
During the suppression hearing, an investigator with the district attorney's office testified that the appellant said that
"`he had intended to kill them. I mean, he went into the fact that the man moved  you know, he saw the man still moving and trying to pull up on the refrigerator and he went over and hit him again. And he was asked  I remember him being asked why. He said they knew who he was.' R. 165."
Taylor, 666 So.2d at 53. The prosecutor also stated that other officers who were present when the appellant confessed remembered this statement after the district attorney's office investigator testified. Therefore, the appellant has not shown that he was prejudiced by the fact that counsel did not impeach Higdon, and he therefore did not satisfy his burden under Strickland.

2.
The appellant also asserts that his attorneys rendered ineffective assistance because they did not question the voluntariness of his confession. However, on direct appeal, this court found that the appellant voluntarily made the statements and that the officers complied with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Therefore, the appellant has not established that he was prejudiced by counsel's performance in this regard.

3.
The appellant further asserts that his attorneys rendered ineffective assistance because they did not object to the repeated assurances of the prosecutor that the jury was not responsible for the sentence. On direct appeal, the Alabama Supreme Court addressed the underlying substantive argument as follows:
"Even though we find no error with regard to the prosecutor's statements regarding the jury's role in sentencing, we note that the trial judge correctly instructed the jury that statements made by the attorneys were not evidence and were not law and that those statements should be disregarded if they were `not supported by the evidence or by the law as given to you by the court.' We also find no error in the trial judge's instructions to the jury on its role in sentencing. It is well established that `the comments of the prosecutor and the instructions of the trial court accurately informing the jury of the extent of its sentencing authority and that its sentence verdict was "advisory" and a "recommendation" and that the trial court would make the final decision as to sentence does not violate Caldwell [v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) ].' Martin v. State, 548 So.2d 488, 494 (Ala.Crim.App.), affirmed, 548 So.2d 496 (Ala.1988), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). See White v. State, 587 So.2d 1218 (Ala.Crim.App.1990), affirmed, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 *1061 L.Ed.2d 142 (1992); Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App.1990), affirmed, 577 So.2d 531 (Ala.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). In sum, we find no error, plain or otherwise, in the comments of the prosecutor, or in those of the trial judge, regarding the jury's role in sentencing in a capital murder trial."
Ex parte Taylor, 666 So.2d at 87-88 (emphasis added). In light of the Alabama Supreme Court's finding on direct appeal, we conclude that the appellant cannot establish that he was prejudiced in this regard. See Strickland.

4.
Finally, the appellant asserts that his attorneys rendered ineffective assistance because they did not object to the prosecutor's egregious and pervasive misconduct, because they provided ineffective advocacy during the guilt phase of his trial, and because they did not effectively argue for instructions on lesser included offenses. Although he makes several bare allegations, he has not satisfied his burden of pleading and proof under Strickland and Rules 32.3 and 32.6(b), Ala. R.Crim. P., as to these claims. Accordingly, he is not entitled to relief in this regard.

O.
Fifteenth, the appellant contends that his attorneys rendered ineffective assistance by making a misleading closing argument. The circuit court made the following findings with regard to this contention:
"Taylor elicited no testimony at the evidentiary hearing from Hart or Downs concerning their guilt-phase closing argument. Because Taylor failed to present evidence in support of this claim at the evidentiary hearing, the Court concludes that Taylor has abandoned it. See, Payne v. State, 791 So.2d 383, 399 (Ala.Crim.App.2000) (concluding that Payne had abandoned his ineffective assistance claims where he presented no evidence to support them at the evidentiary hearing).
"... In the alternative, the Court finds that this claim is without merit. The Court was present during trial counsel's closing argument. Trial counsel told the jury that he `[had] tried to be as honest and open with all [of] you as [they] could in this case.' (R. 1131) Trial counsel's argument was not an argument for a lesser charge, but for an acquittal based on Taylor's lack of intent to kill Mr. and Mrs. Moore. If the jury had a reasonable doubt concerning Taylor's intent to kill the Moores, then their only option would have been to find Taylor not guilty of all the charges. Based on the Court's personal knowledge of trial counsel's closing arguments, the evidence presented at trial, the charges given to the jury, and trial counsel's testimony at the evidentiary hearing regarding their trial strategy, the Court finds that trial counsel's closing argument was reasonable. Taylor has failed to carry his burden of affirmatively proving that trial counsel's performance was deficient or that he was prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P. This claim is without merit and is hereby denied by the Court."
(C.R. 637-38.) The record supports the circuit court's findings, and we adopt them as part of this opinion. In light of the overwhelming evidence of the appellant's guilt, including his confession, counsel's choices were extremely limited. Under these circumstances, we do not conclude that counsel rendered ineffective assistance in this regard.

*1062 P.
Sixteenth, the appellant contends that his attorneys rendered ineffective assistance during the penalty phase of his trial.

1.
Initially, he asserts that counsel did not advocate on his behalf during his opening statement. The circuit court made the following findings of fact regarding this claim:
"[T]he Court, having been present during Hart's penalty-phase opening statement, finds that it was in keeping with trial counsel's trial strategy. Hart did not dwell on the aggravating circumstances, but instead, focused on the importance of the jury's recommendation to the Court and stressed that it was an individual recommendation and that it did not have to be unanimous like the jury's guilt-phase verdict. Reviewing Hart's opening statement in the context of the entire trial, the Court finds that it was reasonable. Taylor has failed to carry his burden of affirmatively proving the trial counsel's performance was deficient or that he was prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P. This claim is without merit and is hereby denied by the Court."
(C.R. 645.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief in this regard.

2.
The appellant also asserts that his attorneys rendered ineffective assistance in conceding the aggravating circumstance that the murders were especially heinous, atrocious, or cruel. On direct appeal, this court stated:
"Defense counsel made this stipulation in [a] strategic effort `to prevent the District Attorney from asking any of these witnesses that we're fixing to call in mitigation, from asking them any questions about the crime itself or the events involving the crime or prevent him from in any way showing these photographs or making reference to these photographs, because that now has been proved by stipulation with the defendant.' R. 1174. In response to questions by both defense counsel and the trial court, the appellant indicated that he understood the stipulation. R. 1173-74."
Taylor, 666 So.2d at 67. As the United States Court of Appeals for the Tenth Circuit stated in Smith v. Gibson, 197 F.3d 454, 461 (10th Cir.1999):
"Petitioner argues defense counsel... conceded that this crime was `cruel,' thus admitting the `especially heinous, atrocious or cruel' aggravating circumstance, and that the crime warranted the death penalty.... The uncontroverted evidence, however, including a number of gruesome photographs of the crime scene and the victim's body, established that the victim was brutally murdered. Defense counsel could not have argued otherwise credibly."
Clearly, counsel made a strategic decision to make the stipulation to keep the prosecution from discussing the horrific facts of the murders. Under the facts of this case, as set forth herein, counsel could not have credibly argued that the murders were not especially heinous, atrocious, or cruel. Therefore, the appellant has not satisfied his burden of proof under Strickland as to this claim.

3.
The appellant further asserts that his attorneys rendered ineffective assistance because they did not present adequate mitigating evidence during the penalty phase of his trial. As stated above, *1063 Hart and Downs presented 18 witnesses to testify as to mitigation during the penalty phase of the trial  3 former high school teachers, 8 friends, 4 family members, 1 minister, 1 youth leader at his church, and 1 police officer. His former teachers testified that he was respectful in school, was never a discipline problem, and that they were shocked to hear about his involvement in the murders. His friends and family members all testified that they were shocked to hear about the murders and his arrest. His parents testified that he had regularly attended church, and his mother testified that he had a normal childhood and normal development and had exhibited normal behavior growing up. Betty McGriff, his great-aunt, testified that he received an award for Christian Attitude and Good Sportsmanship at his church. A police officer who was present when he confessed testified that, at the end of the confession, he had to ask the appellant if he was okay. Finally, during their penalty-phase closing arguments, his attorneys pled for his life.
Clearly, counsel's strategy during the penalty phase of the trial was to humanize the appellant by presenting witnesses who testified that the crime was an aberration and totally uncharacteristic of his previous conduct, that he was a good person who regularly attended church, and that he was well liked by his friends and neighbors. This was strong mitigating evidence. As the United States District Court for the Middle District of Alabama has stated:
"[W]here the crimes committed seem to be aberrations from otherwise lawful behavior, the Eleventh Circuit has recognized that mitigating evidence of good character and the uncharacteristic nature of the crime may have more impact than in other cases. Collier [v. Turpin], 177 F.3d [1184,] 1203 [ (11th Cir. 1999) ]; accord Harris v. Dugger, 874 F.2d 756, 763-64 (11th Cir.1989)."
McNair v. Campbell, 307 F.Supp.2d 1277, 1318 (M.D.Ala.2004).
Also, because the evidence concerning the appellant's mental condition was conflicting, we do not conclude that counsel rendered ineffective assistance by not presenting this evidence during the penalty phase. With regard to this claim, the circuit court made the following findings:
"The exhibits introduced by the State, during the testimony of Hart and Downs at the evidentiary hearing, established that they interviewed Taylor's family and many of his friends in an effort to find an explanation for his actions. Trial counsel testified that, based on the evidence and information available to them at the time of Taylor's trial, i.e., the Rogers and Wilson reports [doctors employed by Taylor Hardin Secure Medical Facility who had evaluated Taylor before trial], interviews with family and friends, their personal interaction with Taylor, the overwhelming evidence of the State's case, and their personal experiences defending criminal cases in Etowah County, they made a strategic choice to present testimony in the penalty-phase to humanize Taylor to the jury in an effort to receive a favorable recommendation. Based on the Court's personal observations of the evidence presented by the State during the guilt-phase, the mitigation witnesses presented at the penalty-phase, and Hart's and Downs's conduct throughout the entire trial, the Court finds that Hart's and Downs's presentation of mitigating evidence was entirely reasonable. Taylor has failed to demonstrate that trial counsel's performance was deficient or that it caused him to be prejudiced as required by Strickland.

"... At the evidentiary hearing, counsel for Taylor attempted to establish *1064 ineffective assistance of trial counsel by showing that they should have done something more or something different instead of showing that no reasonable attorney would have done what Hart and Downs did given the facts and circumstances of this particular case. At the evidentiary hearing, Taylor's primary witness was Dr. Drob. The bulk of Drob's testimony was that, at the time of Taylor's trial, there was, in his opinion, evidence that he suffered from certain mental illnesses that could have been considered by the jury and the court in mitigation. Though the Court allowed Drob to express his opinion about what he considered to be mitigating, the Court is aware that such testimony would not have been permitted at Taylor's trial. See, Waters v. Thomas, 46 F.3d at 1506, (holding that no mental health expert `is competent to express an opinion about whether a particular set of facts constitutes a mitigating circumstance' because `that would invade the province of the judge and jury'). Further, Dr. King testified for the State that he saw no evidence that Taylor suffered from any of the mental illnesses described by Drob.
". . . .
"... Moreover, even assuming, arguendo, that trial counsel had found and presented a witness that would have testified at trial in the manner that Drob did at the evidentiary hearing, the Court finds that `there is no reasonable probability that the balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different.' Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir.2001). The Grayson court concluded that:
"`In light of the brutal nature of this crime against an elderly victim and the specific findings made by the court that sentenced Grayson to death, we find no reasonable probability that the mitigating circumstances gathered and presented in connection with Grayson's state habeas proceedings would have altered the balance of aggravating and mitigating factors in this case.'
"Grayson v. Thompson, 257 F.3d at 1227. Likewise, in the light of Taylor's brutal attack upon and murder of an elderly couple, the Court finds no reasonable probability that the presentation of psychological evidence such as that presented at Taylor's evidentiary hearing would have changed the jury's recommendation. Further, the presentation of such evidence would not have altered this Court's findings that the aggravating circumstances outweighed the mitigating circumstances. This claim is without merit and is hereby denied by the Court."
(C.R. 648-52.) The record supports the circuit court's findings, and we adopt them as part of this opinion.
The appellant also asserts that his attorneys rendered ineffective assistance because they did not elicit testimony from the witnesses during the penalty phase that the jury should spare his life. On direct appeal, when considering whether the trial court erred in not allowing the appellant's pastor to testify that his life should be spared, we stated: "It is the holding of this Court that the opinion of the friends or relatives of the defendant that the defendant should not be sentenced to death is not a relevant mitigating circumstance for the jury to consider at the penalty phase of a capital case." Taylor, 666 So.2d at 53. Therefore, the appellant has not satisfied his burden of proof under Strickland as to this claim.

*1065 4.
The appellant next asserts that his attorneys rendered ineffective assistance because they did not object to the prosecutor's comments that he lacked remorse. On direct appeal, we held that the prosecutor's comments were references to his behavior after he committed the murders rather than references to his constitutional right against self-incrimination. Therefore, there was not any basis for an objection on this ground.

5.
Additionally, the appellant asserts that his attorneys rendered ineffective assistance because they did not object to the prosecutor's pervasive misconduct during the penalty-phase summation. Although he has made several allegations in this regard, he has not established that counsel's performance was deficient and that he was prejudiced by such deficient performance. Therefore, he has not satisfied his burden of proof under Strickland and Rules 32.3 and 32.6(b), Ala. R.Crim. P., as to this claim.

6.
Finally, the appellant asserts that his attorneys rendered ineffective assistance during the sentencing hearing before the trial court because they did not present mitigation witnesses during this hearing. With regard to this contention, the circuit court made the following findings:
"Concerning Taylor's allegation that trial counsel was ineffective for failing to present witnesses at his judicial sentencing, the Court of Criminal Appeals has held that:
"`[Section] 13A-5-47, Ala.Code 1975, governs the determination of sentence by the trial court. Section 13A-5-47, Ala.Code 1975, does not provide for the presentation of additional mitigation evidence at sentencing by the trial court. Therefore, trial counsel did not err in failing to do so.'
"Boyd v. State, 746 So.2d at 398. Because Alabama law does not provide for the presentation of mitigation witnesses at a judicial sentencing for capital murder, trial counsel cannot be ineffective for failing to do so....
"Regarding Taylor's contention that trial counsel failed to present any argument at his judicial sentencing, the Court finds that Taylor has failed to proffer any facts in his petition or present any evidence at his evidentiary hearing that, if presented by trial counsel, would have caused this Court to sentence him to life without parole instead of death. Taylor has failed to carry his burden of affirmatively proving [that] trial counsel's performance was deficient or that he was prejudiced as required by Strickland. See also, Rule 32.3, A.R. Cr. P. This claim is without merit and is hereby denied by the Court."
(C.R. 670-71.) The record supports the circuit court's findings, and we adopt them as part of this opinion. Therefore, the appellant is not entitled to relief in this regard.

VII.
Finally, the appellant argues that the circuit court should not have found to be precluded substantive claims that his attorneys did not raise during the trial. However, he has made only bare allegations in this regard. Therefore, he has not satisfied his burden of pleading and proof pursuant to Rules 32.3 and 32.6(b), Ala. R.Crim. P., as to this claim.
For the above-stated reasons, we affirm the circuit court's judgment.
AFFIRMED.
*1066 McMILLAN, P.J., and WISE, J., concur; COBB, J., concurs in part and dissents in part, with opinion; SHAW, J., concurs in part and dissents in part, with opinion.
COBB, Judge, concurring in part and dissenting in part.

Introduction
This is an appeal from the denial of a Rule 32, Ala. R.Crim. P., petition alleging, among other things, that trial counsel rendered ineffective assistance. I agree with the majority's resolution of many of the issues presented, but I do not agree with its analysis of the ineffective-assistance-of-counsel claims regarding issues that were raised and addressed by this Court on direct appeal from Taylor's conviction and death sentence.[5] The court hearing Taylor's Rule 32 petition refused to permit Taylor to present evidence in support of several of his claims of ineffective assistance. The majority explained:
"The appellant argues that the circuit court improperly prevented him from presenting claims that his attorneys rendered ineffective assistance during the guilt phase of his trial. The circuit court addressed each of the claims to which the appellant refers and denied each of them because this court addressed the underlying substantive claims on direct appeal."
10 So.3d at 1046 (emphasis added).
I do not agree with the majority's conclusion in Part I of the opinion, which states:
"Clearly, then, when this court and/or the Alabama Supreme Court has specifically addressed and rejected a substantive claim on direct appeal, whether reviewing for plain or preserved error, a petitioner in a Rule 32 proceeding who raises an ineffective-assistance claim based on that same substantive claim cannot establish prejudice under Strickland.3"
"3 We finally note that Thomas [v. State, 766 So.2d 860 (Ala.Crim.App. 1998)], and Williams [v. State, 783 So.2d 108 (Ala.Crim.App.2000)], do not stand for the proposition that a petitioner in a Rule 32 proceeding cannot establish prejudice under Strickland [v. Washington, 466 U.S. 668 (1984) ], simply because this court and/or the Alabama Supreme Court conducted a plain error review of the record on direct appeal. See Ex parte Thomas, [766 So.2d 975 (Ala.2000) ]."
The majority appears to have created a dual system for evaluating the plain error review conducted by this Court in all death penalty cases and that is permitted in the Alabama Supreme Court in all death-penalty cases.[6] First, the majority holds that, if this Court or the Alabama Supreme Court addressed and rejected a substantive issue on direct appeal and found that no plain error occurred, then, if a petitioner in Rule 32 proceedings raises an ineffective-assistance-of-counsel claim arising out of that substantive issue, the previous finding of no plain error necessarily precludes a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, according to the majority, when there has been a finding *1067 of no plain error as to a particular matter, a petitioner can never meet the burden of proof established in Strickland because even if he can prove that counsel's performance was deficient with regard to the underlying substantive issue he cannot prove the prejudice prong of the test. Following this line of reasoning, the majority asserts that the trial court can refuse to permit a petitioner to put forth evidence to prove his claims of ineffective assistance of counsel.
Next, in footnote 3 of its opinion, the majority states that if this Court or the Alabama Supreme Court "simply" conducted plain-error review of the entire record on direct appeal in a death-penalty case and a Rule 32 petitioner later raises a claim of ineffective assistance of counsel arising out of a substantive issue not specifically addressed on direct appeal, then the earlier finding of no plain error would not automatically preclude a finding of prejudice under Strickland.
I do not believe that Alabama law or the broader principles of due process allow for the preclusion of a finding of prejudice with regard to an ineffective-assistance-of-counsel claim simply because this Court or the Alabama Supreme Court examined the underlying substantive issue and found no plain error. Examination of cases applying the plain-error rule convinces me that such a conclusion is unwarranted and was never intended when the plain error rule was created. To the extent this Court has held otherwise in a few cases, I believe we reached the wrong conclusion in those cases.
As for the majority's creation of what is, in essence, a dual standard of plain-error review, I cannot agree with what I believe is an unwarranted interpretation of the plain-error rule. Rule 45A, Ala. R.App. P., mandates review of the record for plain error in a capital case in which the death penalty has been imposed, and Rule 39(a)(2)(D) permits such a plain-error review by the Alabama Supreme Court. A finding of no plain error could be reached whether an issue was raised by the appellant in his brief on appeal and addressed by the Courts, or after an appellate court reviewed the record on its own for plain error. A finding of no plain error at the conclusion of review by either Court means just that  no plain error was found to exist. This was true whether the finding was made with regard to an issue that was raised by one or both of the parties and addressed by the Courts or whether the finding followed our mandatory review of the record or the Alabama Supreme Court's discretionary review of the record.
The majority now holds that a finding of no plain error following analysis of an issue that was addressed on appeal has far greater significance than a finding of no plain error following our "simple" review of the entire record under Rule 45A. I find no basis in Alabama law for such a distinction. Nor do I believe such a distinction is, in any way, consistent with the principles of plain-error review that have been in place for decades. Finally, even if there existed any legal support for the newly created dual standard of plain-error review, I cannot agree that appellate review of the substantive issue and a finding of no plain error on direct appeal precludes a finding of prejudice for purposes of Strickland. For the reasons set forth below, I believe that the trial court erred in precluding Taylor from presenting evidence on, and in denying claims of, ineffective assistance of counsel on grounds that the underlying substantive issues were specifically addressed and rejected on direct appeal by this Court and/or by the Alabama Supreme Court.

Plain-Error Review
The Alabama Legislature initially provided for plain-error review by this Court *1068 in capital cases in which the death penalty was imposed. Title 15, Section 382(10), Code of Alabama 1940 (Recomp.1958); § 12-22-241, Ala.Code 1975. In Echols v. State, 47 Ala.App. 23, 249 So.2d 639 (1971), this Court discussed the origin of plain-error review in Alabama; it quoted the legislative rule in force at that time:
"Section 10 of said Act reads as follows:
"`In all cases of automatic appeals the Appellate Court may consider, at its discretion, any testimony that was seriously prejudicial to the rights of the appellant, and may reverse thereon even though no lawful objection or exception was made thereto. The Appellate Court shall consider all of the testimony, and if upon such consideration is of [the] opinion the verdict is so decidedly contrary to the great weight of the evidence as to be wrong and unjust and that upon that ground a new trial should be had, the Court shall enter an order of reversal of the judgment and grant a new trial, though no motion to that effect was presented in the court below.'"
47 Ala.App. at 25, 249 So.2d at 641.
Rule 45A, Ala. R.App. P., now contains Alabama's plain-error rule for this Court; it states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Rule 39(a)(2)(D), Ala. R.App. P., provides for discretionary plain error review in death penalty cases in the Alabama Supreme Court; it
"permit[s] the Supreme Court to notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court or the Court of Criminal Appeals or set forth in the petition, and to take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner...."
Although the actual language contained in Rule 45A appears to provide a liberal standard for possible reversal  i.e., when an "error has or probably has adversely affected" one of the defendant's substantial rights  our appellate courts have applied the standard less generously. For example, in Hooks v. State, 534 So.2d 329 (Ala. Crim.App.1987), aff'd, 534 So.2d 371 (Ala. 1988), we stated:
"In considering what constitutes `plain error' in a capital case, the Alabama Supreme Court has looked to the federal court's interpretation of what is `plain error.' See Ex parte Harrell, 470 So.2d 1309 (Ala.1985); Ex parte Womack, 435 So.2d 766 (Ala.1983).
"In United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court stated that the plain error doctrine should be used to correct only `particularly egregious errors' ... which are those errors that `seriously affect the fairness, integrity or public reputation of judicial proceedings'.... The plain error rule should be applied `solely in those circumstances in which a miscarriage of justice would otherwise result.' Young, supra, 105 S.Ct., at 1047....
"Furthermore, the court noted that the plain error doctrine requires that the `claimed error not only seriously affects "substantial rights" [of the defendant], but that it had an unfair prejudicial impact on the jury's deliberations. *1069 Only then would [a] court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice.' Young, supra, 105 S.Ct., at 1047, n. 14."
Hooks, 534 So.2d at 351-52 (emphasis added). See also Ex parte Hodges, 856 So.2d 936, 948 (Ala.2003); Ex parte Powell, 796 So.2d 434, 436 (Ala.2001), quoting Haney v. State, 603 So.2d 368, 392 (Ala.Crim.App. 1991), aff'd, 603 So.2d 412 (Ala.1992); Gavin v. State, 891 So.2d 907 (Ala.Crim.App. 2003)(all stating that error is plain if it is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings and/or it had an unfair prejudicial impact on the jury's deliberations).
More recently, in Thomas v. State, 824 So.2d 1 (Ala.Crim.App.1999), we adopted the United States Supreme Court's interpretation of plain error set forth in United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), which mandated a four-part inquiry to determine whether error constituted "plain error" pursuant to Rule 52(b), Fed.R.Crim.P.[7] We discussed at length the fundamentals of the plain error rule and the importance of the strict application of the rule. We then stated:
"Particularly in regard to the record before us, the following discussion, by Judge Ed Carnes of the United States Court of Appeals for the Eleventh Circuit, most effectively explains the rationale behind such circumscription of the `plain-error' standard of review. We endorse it wholeheartedly.
"`The narrowness of the plain error rule is a reflection of the importance, indeed necessity, of the contemporaneous objection rule to which it is an exception. The contemporaneous objection rule fosters finality of judgment and deters "sandbagging," saving an issue for appeal in hopes of having another shot at trial if the first one misses....
"`. . . .
"`"In the absence of plain error... it is not our place as an appellate court to second guess the litigants before us and grant them relief they did not request, pursuant to legal theories they did not outline, based on facts they did not relate." Adler v. Duval County School Bd., 112 F.3d 1475, 1481 n. 12 (11th Cir.1997). Because the contemporaneous objection rule is essential to the integrity and efficiency of our judicial process, we have stressed that "[t]he plain error test is difficult to meet." United States v. King, 73 F.3d 1564, 1572 (11th Cir.1996); accord, e.g., United States v. Sorondo, 845 F.2d [945,] at 948-49 [11th Cir.1988]; United States v. Chaney, 662 F.2d 1148, 1152 n. 4 (5th Cir. Unit B 1981).'
"United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998)."
Thomas v. State, 824 So.2d 1, 14 (Ala. Crim.App.1999), rev'd on other grounds, Ex parte Carter, 889 So.2d 528 (Ala.2004).
Thus, the plain-error review set forth in Rule 39(a)(2)(D) and 45A, Ala. R.App. P., as applied, is a stringent one, and one that has not often resulted in reversals in death-penalty cases.

*1070 The Strickland Test and Its Relationship to Plain Error

The United States Supreme Court set out the standard for granting postconviction relief based on a claim of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must establish both that trial counsel's performance was deficient and that the deficient performance prejudiced the petitioner. To prove the prejudice prong of the test, a petitioner must prove that, as a result of counsel's deficient conduct, there is a reasonable probability that the result would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. 2052. The majority notes in its opinion, "The analysis used in reviewing for plain error is substantially the same as the analysis that is used to determine prejudice under Strickland." 10 So.3d at 1047. Although the tests are similar, I do not agree that they are substantially so. Review for plain error under Rule 39(a)(2)(D) and Rule 45A, Ala. R.App. P., has resulted in an "outcome determinative test," that is, plain error is recognized only when it affected the outcome of the case and when the failure to recognize the error would result in a miscarriage of justice. See, e.g., Ex parte Hodges, 856 So.2d 936, 948 (Ala.2003); Adams v. State, 955 So.2d 1037, 1049 (Ala.Crim.App.2003), and cases cited therein, aff'd on return to remand, 995 So.2d at 1106 (Ala.Crim.App. 2003); Gavin v. State, 891 So.2d 907, 931 (Ala.Crim.App.2003), and cases cited therein. The Strickland Court specifically rejected an "outcome determinative test" as a requirement for proving an ineffective-assistance-of-counsel claim. The Court stated:
"An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."
466 U.S. at 694, 104 S.Ct. 2052.
Even though Alabama's plain-error review and the prejudice prong of the Strickland test are similar, they are not identical. Therefore, I cannot agree with the majority's follow-up statement:
"Clearly, then, when this court and/or the Alabama Supreme Court has specifically addressed and rejected a substantive claim on direct appeal, whether reviewing for plain or preserved error, a petitioner in a Rule 32 proceeding who raises an ineffective-assistance claim based on that same substantive claim cannot establish prejudice under Strickland."
10 So.3d at 1047 (footnote omitted).
My review of existing case-law convinces me that the plain-error standard and the prejudice prong of Strickland test were never intended to be identical and, until very recently, were not interpreted by this Court to be nearly identical. To the contrary, the two legal standards are distinct, and they address different alleged errors. Therefore, I cannot agree with the majority's conclusion that, after a claim has been reviewed for preserved or plain error and has been addressed and rejected on direct appeal, a Rule 32 petitioner cannot then establish prejudice if he raises the same substantive claim in the form of a claim of ineffective assistance of counsel.
For more than a decade, this Court has stated that a finding of no plain error on direct appeal is but one factor to be considered *1071 in determining whether a Rule 32 petitioner had established the prejudice prong of an ineffective-assistance-of-counsel claim arising out of the same substantive claim. E.g., Boyd v. State, 746 So.2d 364, 389-90 (Ala.Crim.App.1999); Grayson v. State, 675 So.2d 516, 524 (Ala.Crim.App. 1995); Fortenberry v. State, 659 So.2d 194, 200 (Ala.Crim.App.1994); Hallford v. State, 629 So.2d 6, 10 (Ala.Crim.App.1992). In Thomas v. State, 766 So.2d 860 (Ala. Crim.App.1998), however, this Court first stated a different relationship between a finding of no plain error on direct appeal and the prejudice prong of the Strickland test in post-conviction proceedings. In Thomas, the petitioner contended that his trial counsel were ineffective for failing to object to the trial court's failure to instruct the jury on the lesser included offense of manslaughter. We said:
"However, Thomas has failed to establish the two prongs of Strickland v. Washington. In implicitly rejecting the underlying substantive issue as failing to present any plain error, Rule 45A, Ala. R.App.P., the Alabama Supreme Court implicitly found that the alleged error did not or probably did not adversely affect the substantial right of Thomas. Thus, we must concur with the attorney general that Thomas's ineffective trial counsel argument fails because, by virtue of the Alabama Supreme Court's implicit ruling, Thomas cannot satisfy the prejudice prong of Strickland."
766 So.2d at 953.
The Thomas opinion contained no additional analysis and no explanation for the apparent abandonment of the long-standing rule that a finding of no plain error was but a factor to be considered in the analysis of an ineffective-assistance-of-counsel claim based on the same underlying issue. In several opinions released after Thomas, this Court stated both that a finding of no plain error is one factor to consider when evaluating a claim of ineffective assistance of counsel and, often in the same paragraph, that a finding of no plain error precludes a finding of prejudice. Slaton v. State, 902 So.2d 102, 111 (Ala.Crim.App.2003); McGahee v. State, 885 So.2d 191, 206-07 (Ala.Crim.App.2003); Dobyne v. State, 805 So.2d 733, 744 (Ala. Crim.App.2000), aff'd, 805 So.2d 763 (Ala. 2001); Williams v. State, 783 So.2d 108, 128, 133 (Ala.Crim.App.2000). The two statements are wholly inconsistent, and the repetition of that inconsistency has brought us to the unfortunate result reached today in the majority's decision. I believe that the discrepancy must ultimately be clarified by the Alabama Supreme Court.
In Williams v. State, supra, when we stated that a finding of no plain error precluded a finding of prejudice, we relied on a Missouri case, State v. Clark, 913 S.W.2d 399 (Mo.Ct.App.1996). Clark stated, "A finding of no manifest injustice under the `plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." 913 S.W.2d at 406. Clark and other cases applying that rule of law were abrogated by Deck v. State, 68 S.W.3d 418 (Mo.2002). The Missouri Supreme Court recognized that the inquiry on direct appeal under the plain-error rule and the inquiry regarding prejudice in a claim of ineffective assistance of counsel are different; the Court stated that the "denial of a plain error claim is not dispositive of the question whether counsel was ineffective in failing to preserve the issue as to which plain error was not found." 68 S.W.3d at 428. The Court stated that a finding of plain error was appropriate when "the error so substantially affected [the defendant's] rights that *1072 a manifest injustice or a miscarriage of justice would result were the error left uncorrected. Rule 32.20; State v. Winfield, 5 S.W.3d 505, 516 (Mo. Banc 1999)." 68 S.W.3d at 424. The Court stated that a new trial could be granted as a result of a finding of plain error on direct appeal "only if the error was outcome determinative." Id. (Citation omitted.)
Thus, the circuit court's reliance on Williams, which it cited in support of its holding below, that the finding of no plain error on direct appeal precluded a finding of prejudice, is misplaced to the extent that State v. Clark was abrogated by Deck v. Missouri. The majority acknowledges that Clark has been abrogated but notes that, in Williams, this Court also relied on Thomas v. State, 766 So.2d 860, 953 (Ala. Crim.App.1998); Thomas, the majority contends, controls the outcome of this case. I disagree based on the opinion of the Alabama Supreme Court affirming our decision in Thomas. Although that Court has not addressed the issue directly, it has implicitly rejected the majority's position.
When the Alabama Supreme Court reviewed our judgment in Thomas v. State, the first case in which we stated that a finding of no plain error precluded a finding of prejudice under Strickland, the Alabama Supreme Court affirmed the judgment, but it did not affirm that specific holding. Ex parte Thomas, 766 So.2d 975 (Ala.2000). Rather, the Court framed the issue as follows: "The issue of whether trial defense counsel's not preserving error and thereby relegating the defendant-petitioner to plain-error review prejudiced the defendant-petitioner depends on whether he would have obtained a reversal and a new trial (an obviously better result) if his trial defense counsel had preserved the error for review." 766 So.2d at 979. The Court then conducted a "preserved-error review" of the issue and determined that, even if counsel had objected to the trial court's failure to instruct the jury on manslaughter, Thomas would not have obtained a reversal on appeal. 766 So.2d at 980.
The majority here acknowledges that the Alabama Supreme Court did not adopt or affirm our holding that the finding of no plain error necessarily precluded a finding of no prejudice in a postconviction proceeding. However, in footnote 3 of its opinion, the majority here seeks to limit the Supreme Court's opinion in Ex parte Thomas by stating that it "was limited to ineffective-assistance claims based on underlying substantive claims that had not been specifically addressed and rejected by this court and/or the Alabama Supreme Court on direct appeal." 10 So.3d at 1046. Nothing in the Supreme Court's opinion in Ex parte Thomas indicates that its "preserved-error review" was limited to claims that had not been specifically addressed and rejected on direct appeal. Ex parte Thomas thus implicitly rejected our holding a finding of no plain error on direct appeal precludes a finding of prejudice under Strickland. The majority's attempt to limit the clear holding in Ex parte Thomas must fail for the reasons discussed below.
Rule 45A, Ala. R.App. P., requires this Court to notice any plain error or defect in the proceedings, whether such error was objected to in the trial court. The rule does not distinguish between, or offer different levels of scrutiny for, plain-error review of the record for issues raised by counsel on direct appeal and plain-error review of the entire record, which we are mandated to perform. There is only one plain-error rule. The majority's attempt, in footnote 3 of its opinion, to limit Ex parte Thomas and its implicit rejection of the holding regarding the preclusion of a finding of prejudice is, in my opinion, a *1073 weak and unsuccessful attempt to uphold that portion the trial court's decision in this case and to uphold a portion of our decision in Thomas.
Moreover, the majority's new dual-standard approach to plain-error review under Rule 45A implicitly questions the mandated plain-error review we have conducted of every record in every capital case in which the death penalty has been imposed. The majority implicitly holds that our review of a record on direct appeal in a death penalty case and our finding of no plain error means something less than a finding of no plain error following a discussion of an underlying substantive issue. The majority's dual-standard seems to imply that it believes that our mandatory review of the direct appeal record in each death-penalty case is something of a sham. This distinction gives less weight, if it gives any weight, to the finding of no plain error following mandatory review. The majority does not explain the reasons for the distinction it makes, and I have been unable to intuit any of my own. Nothing in the rule or in our existing caselaw warrants this distinction, and it should not be adopted here.
My reading of the Supreme Court's opinion in Ex parte Thomas convinces me that we must recognize that trial courts and this Court can no longer state that a finding of no plain error on direct appeal whether the error was raised and addressed on appeal or whether the finding was a result of our mandatory review of the recordnecessarily precludes a finding of prejudice with regard to an ineffective-assistance-of-counsel claim. Rather, we must return to our original analysis, as stated in Hallford v. State, 629 So.2d 6, 10 (Ala.Crim.App.1992), and its progeny, that a finding of no plain error on direct appeal is a factor to consider in the evaluation of a claim of ineffective assistance of counsel arising out of that substantive claim.
The final reason that I believe the majority's analysis on the plain-error/prejudice issue is flawed is that, as the plain-error rule has been applied by the Alabama Supreme Court and by our Court, the burden of proving plain error on direct appeal is higher than the burden of proving prejudice under the Strickland test. As discussed earlier in this special writing, Rule 39(a)(2)(D) and Rule 45A, Ala. R.App. P., though not so stringent in their words, have been applied in such a manner as to be an "outcome determinative test." That is, as discussed above, a finding of plain error will not be made unless the failure to do so would result in a miscarriage of justice, or unless it had an unfair impact on the jury's deliberations, or unless it seriously affected the fairness of the judicial proceedings. The prejudice prong of the Strickland test is less difficult to meet. "With regard to the prejudice inquiry, only the strict outcome-determinative test, among the standards articulated in the lower courts, imposes a heavier burden on defendants than the tests laid down today. The difference, however, should alter the merit of an ineffectiveness claim only in the rarest case." Strickland v. Washington, 466 U.S. at 697, 104 S.Ct. 2052. Therefore, a defendant's failure to prove plain error on direct appeal cannot in all cases preclude a finding of prejudice in postconviction proceedings. To hold otherwise, I believe, is contrary to the intent of Alabama law and cases decided by the United States Supreme Court.

Conclusion
Based on the foregoing, I must dissent from the majority's analysis and holdings regarding the effect of a finding of no plain error on direct appeal and the preclusion of a finding of prejudice under Strickland in Rule 32 proceedings. Taylor should *1074 have been permitted to put forth evidence to establish his claims of ineffective assistance of counsel, if those claims were properly pleaded. The majority's attempt to limit the Alabama Supreme Court's holding in Ex parte Thomas, 766 So.2d 975 (Ala.2000), fails for lack of logic and for lack of support in the law. To the extent this Court has previously held that a finding of no plain error on direct appeal precludes a finding of prejudice in a postconviction proceeding,[8] I believe these holdings are in error and that those cases should be overruled in relevant part. Finally, I encourage the other members of this Court to return to the rule of law that was, I believe, originally intended when this issue was first considered in this Court; we should again state clearly that a finding of no plain error on direct appeal is but one factor to be considered in the analysis of prejudice under Strickland.
For the foregoing reasons, I concur in part and dissent in part from the majority's opinion.
SHAW, Judge, concurring in part and dissenting in part.
I join Judge Cobb's special writing, with the following caveat.
The weight of authority supports the conclusion that the plain-error standard of review is more stringent than the standard of review articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In that vein, the weight of authority also militates against this Court's adherence to the rule first articulated in Thomas v. State, 766 So.2d 860 (Ala.Crim.App.1998)that a petitioner in a Rule 32, Ala. R.Crim. P., proceeding cannot, as a matter of law, establish prejudice under Strickland when this Court has found no plain error with respect to a substantive claim on direct appeal. As Judge Cobb correctly notes, Ex parte Thomas, 766 So.2d 975 (Ala.2000), stands squarely in the way of the majority's holding on this issue.[9]
*1075 Having said that, however, it strikes me that all of our analysis on both sides of this question reflects a basic struggle to reconcile the necessary tension that often exists between a theoretical legal principle and the practical realities of judicial review. I am sympathetic to the majority's pragmatic analysis because it approaches the issue by asking the fundamental question I often ask myself: Under what circumstances would this Court really find substantial prejudice under a preserved-error/Strickland analysis and not under a plain-error analysis? Although implicit in the Alabama Supreme Court's holding in Ex parte Thomas is the conclusion that such a case could be presented, that Court, I think, would agree with the United States Supreme Court's assessment in Strickland that "[t]he difference [between a strict outcome-determinative test and the test articulated in Strickland for determining prejudice]... should alter the merit of an ineffectiveness claim only in the rarest case." 466 U.S. at 697, 104 S.Ct. 2052.[10] The possibility that that rare case could be presented appears to form the basis for the holding in Ex parte Thomas, and I am bound by that decision.
Therefore, I would remand this case for the trial court to determine whether the claims at issue were adequately pleaded and, if so, whether there was any merit to them under the standard set out in Strickland.
NOTES
[1] We note that, when the Alabama Supreme Court reviewed this court's decision in Thomas, it did not disturb this holding. Although that court conducted a preserved error review with respect to the ineffective-assistance claim Thomas raised before that court, it specifically noted that "neither the Court of Criminal Appeals nor this Court even mentioned the [underlying substantive] issue ... in the respective opinions at that stage." Ex parte Thomas, 766 So.2d at 979. Therefore, that case did not abrogate this court's prior procedure, which was enunciated in Thomas. Instead, it was limited to ineffective-assistance claims based on underlying substantive claims that had not been specifically addressed and rejected by this court and/or the Alabama Supreme Court on direct appeal.
[2] We further note that, as recently as May 28, 2004, this court followed this same rationale in Coral v. State, 900 So.2d 1274, 1286-87 (Ala.Crim.App.2004), when we held:

"Coral also argues that counsel failed to object to inadmissible statements in the presentence report that he alleges resulted in prejudice to him.
". . . .
"... The substantive claim was addressed by the Alabama Supreme Court on direct appeal and determined adversely to Coral. Coral, 628 So.2d at 992. Therefore, Coral can show no prejudice. The circuit court correctly denied relief on this claim."
(Emphasis added.)
[3] We finally note that Thomas and Williams do not stand for the proposition that a petitioner in a Rule 32 proceeding cannot establish prejudice under Strickland simply because this court and/or the Alabama Supreme Court conducted a plain error review of the record on direct appeal. See Ex parte Thomas, supra.
[4] In his brief, the appellant makes arguments that he did not present to the circuit court. Therefore, those arguments are not properly before this court.
[5] The majority addresses this point fully in Part I of its opinion, but reaches the same conclusion with regard to other ineffective-assistance-of-counsel claims discussed elsewhere in the opinion. This writing is directed to all of those claims.
[6] Plain-error review of the entire record in this Court is mandated by Rule 45A, Ala. R.App. P.; in the Alabama Supreme Court, plain-error review of the record is permitted by Rule 39(a)(2)(D), Ala. R.App. P.
[7] The four-part inquiry requires: (1) that error exists; (2) that the error be plain; (3) that the error affect substantial rights; and (4) that "the error `seriously affect the fairness, integrity or public reputation of judicial proceedings.'" Olano, 507 U.S. at 736, 113 S.Ct. 1770, quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).
[8] E.g., Coral v. State, 900 So.2d 1274, 1287 (Ala.Crim.App.2004); Williams v. State, 783 So.2d 108, 133 (Ala.Crim.App.2000); Thomas v. State, 766 So.2d 860, 953 (Ala.Crim.App. 1998).
[9] The Thomas Court stated:

"In the case before us, the failure of the defendant-petitioner's trial counsel to preserve error for the failure of the trial court to instruct the jury on the lesser included offense of manslaughter relegated the defendant-petitioner to the plain-error rule, which increased the burden on the defendant-petitioner to prove prejudice. Ex parte Woodall, 730 So.2d 652, 657 (Ala. 1998); Kuenzel v. State, 577 So.2d 474, 489 (Ala. Crim.App.1990), aff'd, 577 So.2d 531 (Ala. 1991), aff'd, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991); and Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala.1985) (a failure to object at trial, while not precluding our review, will weigh against any claim of prejudice). Indeed, plain error review apparently availed the defendant-petitioner nothing on his direct appeal, for neither the Court of Criminal Appeals nor this Court even mentioned the issue of the failure of the trial court to instruct the jury on the lesser included offense of manslaughter in the respective opinions at that stage. Thomas v. State, [539 So.2d 375 (Ala.Crim.App.1988)], and Ex parte Thomas, [539 So.2d 399 (Ala.1988)].
"....
"The issue of whether trial defense counsel's not preserving error and thereby relegating the defendant-petitioner to plain-error review prejudiced the defendant-petitioner depends on whether he would have obtained a reversal and a new trial (an obviously better result) if his trial defense counsel had preserved the error for review. For the reasons we will explain, we conclude that even a preserved-error review of this particular issue would not have availed the defendant-petitioner a reversal and therefore the failure by trial defense counsel to preserve the error did not prejudice the defendant-petitioner. In other words, the result would have been the same in either event because, under the particular facts and circumstances of this case, had trial defense counsel preserved the error, the appellate courts would have recognized the error but would not have found prejudice that required reversal."
766 So.2d at 979.
[10] In Deck v. State, 68 S.W.3d 418, 428 (Mo. 2002), the Missouri Supreme Court, overruling State v. Clark, 913 S.W.2d 399 (Mo.Ct. App. 1996), noted:

"Of course, as Strickland recognized, 466 U.S. at 694, 697, 104 S.Ct. 2052, this theoretical difference in the two standards of review will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, for, in most cases, an error that is not outcome-determinative on direct appeal will also fail to meet the Strickland test. Nonetheless, Strickland cautions that the distinction in the standards of review is important because there are a small number of cases in which the application of the two tests will produce different results. Id. at 697, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674."